BALTIMORE & O. TEL. CO. OF BALTIMORE COUNTY et al. v. INTERSTATE TEL. CO.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1893.)

No. 28.

1. CORPORATIONS—CONTRACTS—INSOLVENCY—LIABILITIES—TRUST FUND.

A railroad company, owning an extensive telegraph system, caused the incorporation of a telegraph company by its officials, furnished its entire

capital stock, and in the name of such telegraph company contracted with complainant. For breach of such contract, complainant recovered judgment against the telegraph company. The railroad company sold the entire telegraph plant, received all the consideration, and left the telegraph company insolvent, and without assets of any kind. *Held*, that the money realized by the railroad company from such sale was in its hands a trust fund properly applicable to the payment of such judgment, and that payment thereof would be enforced by a court of equity. 51 Fed. Rep. 49, affirmed.

2. SAME—CREDITOR'S BILL—MULTIFARIOUSNESS.

A creditor's bill seeking to compel payment by the railroad company of the judgment against the telegraph company, to which bill both companies are made parties, and which sets out the judgment, execution, and return thereof unsatisfied, and the insolvency of the telegraph company, by reason of the sale of its plant by the railroad company, is not multifarious.

3. SAME—WAIVER.

The fact that complainant elected to sue the agent, the telegraph company, and take judgment against it, did not preclude it from maintaining the suit against the railroad company to compel payment of such judgment.

4. SAME—RECEIVERS—APPOINTMENT.

There being no outstanding debts of the telegraph company, except that of complainant, and possibly a claim for advances on the part of the railroad company, the appointment of a receiver for the telegraph company was unnecessary.

Appeal from the Circuit Court of the United States for the District of Maryland.

In Equity. Bill by the Interstate Telegraph Company against the Baltimore & Ohio Railroad Company and the Baltimore & Ohio Telegraph Company of Baltimore County to compel the payment by the railroad company of a judgment recovered by complainant against the telegraph company. Decree for complainant. 51 Fed. Rep. 49. Defendants appeal. Affirmed.

C. J. M. Gwinn, for appellants.

N. P. Bond, R. D. Morrison, and C. E. Warner, for appellee.

Before BOND and GOFF, Circuit Judges, and SIMONTON, District Judge.

SIMONTON, District Judge. The Baltimore & Ohio Railroad Company used in connection with its railroad system lines of telegraph wires, with poles and plant. They facilitated the business of the railroad. With the view of diminishing the expense of this telegraphic system, and of increasing its usefulness, the Baltimore & Ohio Railroad Company determined to open it to use by the public. Pursuing this plan, it extended its lines in many directions. Between the years 1877 and 1885, it established a system of more than 6,000 miles of poles, and 47,000 miles of wire, costing millions of dollars. The method adopted by the Baltimore & Ohio Railroad Company in developing this plan was the formation of a number of corporations in several states of the Union, all bearing the distinctive prefix "Baltimore & Ohio," and known respectively as the Baltimore & Ohio Telegraph Company of Illinois, or of Ohio, or of New Jersey, etc., as the case may have been. Each corporation had small capital. The corporators were officials of the railroad com-

pany, and the capital stock was all paid by the railroad company. At the head of all this telegraphic system, as its general manager, was David H. Bates. He held his position by the appointment of the Baltimore & Ohio Railroad Company, directly. At one time after this appointment he filled the place of president of the Baltimore & Ohio Telegraph Company of Baltimore City, which was the central part of the system. When the use of this company was discontinued, he in like manner became the president of the Baltimore & Ohio Telegraph Company of Baltimore County. This last-named company was incorporated 2d November, 1885. Its capital stock was $100,000. All of its corporators were officials of the Baltimore & Ohio Railroad Company. Every dollar of the capital stock was paid by this railroad company, for whom, and for whose use, the nominal stockholders held the stock. This new corporation, the Baltimore & Ohio Telegraph Company of Baltimore County, became the center of the telegraphic system. It controlled and operated all the lines theretofore controlled or operated by the railroad company and its telegraph corporations. It was in possession and control of the plant on the lines of the railroad company, and outside and beyond these lines owned valuable plant. Although its capital was but $100,000, its outlay extended into millions and was supplied by the railroad company. The record does not disclose whether it had any money in its treasury. All requisitions for money were made by the manager upon its treasurer, who was also treasurer of the railroad company, and these were met promptly. In the mode of dealing between the railroad company and the telegraph company, these were treated as advances. At one time there was a plan projected whereby a contract of purchase should be executed between the two companies, and a bond or bonds were to be executed by the telegraph company to the extent of $6,000,000, to be secured by a mortgage of the plant, and intended to cover all money transactions between them. The bond or bonds were executed. The mortgage never was executed. All of the transactions and expenditures of the telegraph company were under the supervision and control of the railroad company. It is difficult to fix the exact relation between these two companies,—whether the railroad company exercised its control as the sole stockholder,—that is to say, as the only person having any beneficial interest in its stock,—or whether as the principal controlling its agent, or whether the telegraph company was one of the bureaus or departments of this great railroad system, for which a charter of incorporation had been obtained simply for convenience, or whether it exercised control as lessor over its lessee, or as creditor over its debtor. Be this as it may, the identity in action of the two corporations was complete. On 17th December, 1885, the Baltimore & Ohio Telegraph Company of Baltimore County entered into a contract with the Interstate Telegraph Construction Company of Michigan, followed by a supplemental contract made 30th November, 1886. These contracts related to the extensions of the line of telegraphic communication and territory. They contained certain covenants which need not be detailed. While these agreements were in full force and operation,—that is to say, on 15th October,

1887,—the Baltimore & Ohio Railroad Company, for the sum of $5,000,000, and the payment of $60,000 per year for 50 years, sold and conveyed to the Western Union Telegraph Company the entire line and system operated, controlled, and owned by the Baltimore & Ohio Telegraph Company of Baltimore County, and all the plant and privileges connected therewith. It also directed and accomplished the assignment and transfer to the Western Union Telegraph Company of all the capital stock in the Baltimore & Ohio Telegraph Companies heretofore referred to. After this conveyance and transfer the Baltimore & Ohio Telegraph Company of Baltimore County could not any longer perform its covenants with the Interstate Telegraph Company, having been denuded of its property and plant thereby. Thereupon the latter company brought its suit on the law side of the circuit court for the district of Maryland and recovered judgment against the Baltimore & Ohio Telegraph Company in the sum of $25,000. Execution was issued on this judgment, and returned nulla bona. Upon this the Interstate Telegraph Company instituted proceedings on the equity side of the same court against the Baltimore & Ohio Railroad Company and the Baltimore & Ohio Telegraph Company of Baltimore County, seeking the payment of this judgment. Each of the defendants filed its demurrer to the bill as multifarious. These demurrers were overruled in the court below, and its action thereon is the ground for the first and second exceptions.

"It is impracticable to lay down any rule as to what constitutes multifariousness, as an abstract proposition. Each case must depend on its own circumstances, and much must necessarily be left, where the authorities leave it, to the sound discretion of the court." Oliver v. Piatt, 3 How. 411; Attorney General v. Cradock, 3 Mylne & C. 85; Story, Eq. Pl. §§ 530, 540. The purpose of this bill is to reach certain moneys alleged to be in the hands of the Baltimore & Ohio Railroad Company, and which, it is charged, are applicable to the debts of the Baltimore & Ohio Telegraph Company of Baltimore County. It sets out the intimate relations between the two companies, whereby the affairs, business, and property of the telegraph company were controlled by the railroad company; that, taking advantage of this, the railroad company has sold to the Western Union Company a large and valuable telegraphic plant, theretofore under the operation, control, real and apparent ownership, of the Baltimore & Ohio Telegraph Company of Baltimore County, and had appropriated the money derived from said sale to its own use; that this money really belonged to the creditors of the Baltimore & Ohio Telegraph Company. It sets out its judgment, execution, and the return thereon, and the insolvency of the Baltimore & Ohio Telegraph Company, by reason of the action of the railroad company. As the complainant works out its rights through the telegraph company, it is made a party defendant. As this is a creditor's bill, it seeks no direct payment to itself, but to a receiver, whose appointment is asked for in behalf of all creditors who may come in to this suit. The scope, purpose, and proposed result of the bill are one. It could not be maintained without making both

defendants parties thereto. The judgment of the circuit court overruling the demurrers is affirmed.

Leave of the court to that end having been given, both defendants answered. Testimony was taken. The cause was heard on the merits. The court ordered the payment of this judgment by the Baltimore & Ohio Railroad Company. The remaining exceptions attack this decree.

As we have seen, the Baltimore & Ohio Telegraph Company of Baltimore County was in the operation, possession, and control of the entire telegraphic system inaugurated by the Baltimore & Ohio Railroad Company. With respect to so much of the plant as was beyond the lines of the railroad company, it would seem that the telegraph company was the owner thereof. With respect to so much of the plant as was on the lines of the railroad, the telegraph company was in possession of, and operated it, in some sort of capacity, either as lessee, agent, or under operating contract, or as vendee. In whatever capacity, and under whatever title, it held, two facts are clear: That to the world the Baltimore & Ohio Telegraph Company of Baltimore County appeared to be the owner; and in reality it was under the control, management, and direction of the Baltimore & Ohio Railroad Company. The manager of the entire telegraph system was the selection of, and employe of, the railroad company, holding the position of president of the telegraph company, simply because of his selection and employment, and not by the action of any board of directors; this manager knowing nothing of any meeting of such a board, and never having attended one. The Baltimore & Ohio Railroad Company, using this control, sold the whole of the property operated, controlled, managed, and owned by the Baltimore & Ohio Telegraph Company to the Western Union Telegraph Company, and received and appropriated the proceeds of the sale. Thereupon the telegraph company became and was totally insolvent. As this telegraph company was a corporation, under the circumstances stated, its property and assets were a trust fund for the payment of all of its creditors. Curran v. Arkansas, 15 How. 304; Sawyer v. Hoag, 17 Wall. 620. When, therefore, the Baltimore & Ohio Railroad Company took possession of, controlled, and appropriated this property and its proceeds, it took them impressed with these trusts, and is bound by them. This result follows, whether it acted as sole beneficial owner of all its stock, or as creditor who had made large advances, or as principal who had placed large and valuable assets in the hands of its agent, as ostensible owner, and thus secured its credit, or as vendor who had sold on credit without taking mortgage security, or as lessor who had entered upon the possession of its lessee.

The Baltimore & Ohio Railroad Company insists that the complainant, before his action at law, had the choice of suit against it as principal, or the telegraph company as agent; that it made the election, and having obtained judgment against the telegraph company, and entered it, it can no longer maintain an action against the railroad company, the alleged principal. We are not called upon to decide whether the rule which prevails in Westminster Hall, and

which sustains this position, (see 2 Smith, Lead. Cas. [8th Ed.] pt. 1, p. 386, etc.,) is the law of this court, or whether we will follow the broader rule adopted in some of our states. Maple v. Railroad Co., 40 Ohio St. 313. The bill is not a proceeding against the railroad company for damages upon a breach of contract by its agent. The question of damages has been made and decided. The purpose of the bill is to follow in the hands of the railroad company moneys which, ex equo et bono, are applicable to the debts and contracts of the telegraph company, taken by the railroad company with knowledge of this. It seeks restitution.

One other exception must be noticed. The testimony in the case shows that there are no outstanding debts of the Baltimore & Ohio Telegraph Company of Baltimore County but this one held by complainant, and perhaps a claim for advances on the part of the Baltimore & Ohio Railroad Company. This being the case, the circuit court evidently saw no reason for the appointment of a receiver, and we concur in this view. The railroad company, if it be a creditor, has mixed the trust funds with its own, and must pay.

The last exception, as to costs, is within the discretion of the circuit court. The exceptions to the circuit decree are overruled, and the decree affirmed, with costs. Let the case be remanded to that court for such further proceedings as may be necessary.