### In re WATERTOWN PAPER CO.

(Circuit Court of Appeals, Second Circuit.    March 16, 1909.    On Rehearing, April 13, 1909.)

Nos. 165, 166.

**1. BANKRUPTCY (§ 332\*)—CLAIMS—PRESENTATION—FORM.**

Where the whole account between claimant and the bankrupt corporation was fully inquired into before a special master, and if the claim, which was irregular in form, had been amended so as to conform to the proof the inquiry would not have been changed, and the amount was correctly stated, the fact that the consideration for the debt was stated as "wood pulp sold and delivered," when in fact the claim was for a balance of a running account, a large part of which represented an indebtedness for wood pulp sold and delivered, did not justify a rejection of the claim.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 332.\*]

**2. BANKRUPTCY (§ 340\*)—CLAIMS—REJECTION.**

Evidence *held* insufficient to justify the rejection of a claim by a corporation against the bankrupt corporation, on the ground that the two corporations were so closely owned and identified as to constitute in fact but one corporation.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.\*]

**3. CORPORATIONS (§ 378\*) — SEPARATE CORPORATIONS—OWNERSHIP OF STOCK—MERGER.**

Under the rule that a corporation is an entity, separate and distinct from its stockholders and from corporations with which it may be connected, the facts that the stockholders of two separately chartered corporations are identical, that one owns shares in the other, and that they have mutual dealings, will not in general merge them into one corporation, or prevent the enforcement by one of an otherwise valid claim against the other.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 378.\*]

**4. CORPORATIONS (§ 378\*)—SEPARATE EXISTENCE—OWNERSHIP OF STOCK.**

After the organization of a paper company, its stockholders caused the organization of a pulp company, with funds advanced by the paper company, but for the account of its stockholders, to whom the advancements were charged. The paper company owned no stock of the pulp company, and, while the two corporations mingled their affairs, the paper company purchasing its pulp, etc., from the pulp company, and the controlling stockholders regarded the two corporations generally as different departments of their business, the separate corporate organizations were kept up, each corporation keeping its own books, having its own creditors, owning its own assets, and conducting its own business in its own name, nor were the stockholders of the two entirely the same. *Held*, that

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the separate existence of such corporations was not fraudulent, nor were their affairs so conducted as to make one a mere instrumentality or adjunct of the other, so as to prevent the enforcement of claims of the pulp company against the paper company.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 378.*]

5. BANKRUPTCY (§ 355*)—CLAIMS—SECURED CLAIMS—PLEDGES.

After a corporation which became bankrupt had been in existence for a considerable period, its controlling stockholders organized another corporation known as "The Pulp Company." Thereafter the latter's officers pledged certain of its bonds to secure notes and accounts of the bankrupt, and T., having subsequently purchased the stock of both corporations, took assignments of these debts of the bankrupt in his own name and acquired the collateral bonds so pledged. *Held*, that T., though the owner of all the shares of the Pulp Company, was neither the corporation nor the accommodation pledgor for the benefit of the bankrupt, and hence could not have such notes and accounts of the bankrupt allowed as unsecured claims against its estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 355.*]

Appeals from the District Court of the United States for the Northern District of New York.

In the first appeal, the H. Remington & Son Pulp & Paper Company (designated in the opinion following as the "Pulp Company") appeals from an order disallowing a claim of $72,775.45 presented by it against the bankrupt estate of the Watertown Paper Company (designated in the opinion as the "Paper Company"). In the second appeal, John B. Taylor appeals from an order disallowing a claim of $28,498.33 presented by him against said bankrupt estate. Although the claims are distinct and have been the subject of separate orders, the appeals have been argued together and present enough facts in common to render their consideration in one opinion expedient.

Elon R. Brown and Geo. S. McCartin, for appellants.
Frederick M. Boyer, for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

### 1. The Claim of the Pulp Company.

NOYES, Circuit Judge. The statement of the Pulp Company's claim as presented embraced items of "merchandise" furnished at various times from September 30, 1904, to November 16, 1905, amounting to $72,775.45. The affidavit to which the statement was annexed stated that the consideration of the debt was "wood pulp sold and delivered." It appears from the books of the corporations, however, that said amount was really the balance of the running accounts between said corporations extending over a long period. It also appears that the accountant, in preparing the claim, took this balance from the books and sufficient of the late sales to amount thereto, and stated the one as the consideration of the other.

It is urged at the outset that the claim should be rejected because it was improperly presented. It was presented in irregular form. Other items than merchandise entered into the account. Payments had been made and should have been shown. When the proof came in, showing that the claim was for a balance of account, instead of for merchandise sold, it should properly have been amended. Still the whole matter of the account between the two corporations was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fully inquired into before the special master, and, if the claim had been amended so as to conform to the proof, the inquiry would have been in no way changed. The amount was correctly stated. Wood pulp sold did in fact constitute the consideration of a large part of the indebtedness. The District Court apparently rejected the claim upon other grounds than those of form. Under all the circumstances, we think that the technical objection of defective presentation should not be sustained.

In considering the claim of the Pulp Company upon its merits, we must start with the assumption that, if the Paper Company were not a bankrupt, the claim would be valid and enforceable in the courts. The books of the corporations show that the balance in favor of the Pulp Company is the amount stated in the claim as presented. Indeed, the appellees say in their brief:

"No question is made in the proofs by contestants that the pulp mill did manufacture and deliver to the paper mill pulp to the extent and amount of vastly more than $72.775.45. Nor is any question made but that said last-mentioned sum represented the balance of the running account kept between the two mills and included all items from the organization of the Pulp Company in 1887 to the date of adjudication, whether of money, credits, or pulp."

The contention of appellees, however, is that the claim is unenforceable against the bankrupt estate of the Paper Company because —as they allege—the Pulp Company and the Paper Company are not two separate corporations, but one. "There is no such claim"— they say—"unless, indeed, the bankrupt can be said to have a claim against itself." In other words, they claim that the Pulp Company was merely an adjunct or branch of the Paper Company. It is necessary, therefore, before considering the legal questions, to examine the facts appearing in the record with respect to the organization, existence, and relations of the two corporations.

The bankrupt—the Paper Company—was organized in 1864 with a capital stock of $14,000, which was afterwards increased to $20,000. Prior to 1886 its entire capital stock was owned by Hiram Remington and Edward W. Remington. At that time Hiram Remington gave 20 shares to each of his three daughters, and the ownership remained the same down to the time of his death in 1905. The Pulp Company was organized in 1887 with a capital stock of $20,000, of which $10,000 was taken by Hiram Remington, $9,500 by Edward Remington and $500 by Nellie Remington, wife of Edward Remington. The stock of the Pulp Company was paid for by Hiram Remington and Edward Remington in the following manner: They both had credits of considerable sums upon the books of the Paper Company, which by their direction advanced the necessary funds to the Pulp Company and charged the advancements to their accounts. In 1902 the stock of this company was increased by a stock dividend to $128,000, all of which was held by the same stockholders. In March, 1905, Hiram Remington died, and his shares in the two corporations were distributed among his children. Prior to that time there had also been some changes in the holdings of Edward Remington and his wife in the Pulp Company. It may be broadly stated, however, that during the entire existence of the Pulp Company prior to November, 1905, when

John B. Taylor acquired the shares of the two corporations, the ownership of their stock had been in Hiram Remington and Edward Remington and their families. But it also appears that the several stockholders had different interests in the two corporations and that some owned stock only in one corporation.

The affairs of the two corporations were closely intermingled. For some years after the organization of the Pulp Company the Paper Company manufactured its own pulp; but in 1891 and thereafter it procured its supply from the Pulp Company and took substantially all that it produced. This it made into paper and sold it in the market. The corporations gave each other commercial paper and indorsed for each other. Separate books of account were kept for the two corporations; but the business was conducted from the office of the Paper Company. The Pulp Company had no bank account; all its bills being paid by the Paper Company and charged to its account. All credits of the Pulp Company were collected by the Paper Company and credited to it. A certain proportion of the office expenses was charged to the Pulp Company.

The case thus presented is one in which the stockholders of two corporations are largely the same, in which both corporations have been under the same management, and in which their affairs have for years been involved and intermingled; and the legal question is whether these relations prevent the one corporation from enforcing against the bankrupt estate of the other a claim which, in case the latter corporation had remained solvent, would have been both valid and enforceable. It must be clearly borne in mind that this is not a case in which a creditor is suing a corporation upon the ground that it has so held itself out in connection with another corporation as, upon principles of estoppel, to render it responsible for a particular debt of the latter. Any legal principle which would prevent the Pulp Company from collecting its claim from the estate of the Paper Company would permit all the creditors of the Paper Company to look to the Pulp Company for the payment of their demands—would, in effect, extend the jurisdiction of the bankruptcy court over the Pulp Company's property.

Now, it is an elementary and fundamental principle of corporation law that a corporation is an entity separate and distinct from its stockholders and from other corporations with which it may be connected. The fact that the stockholders of two separately chartered corporations are identical, that one owns shares in another, and that they have mutual dealings, will not, as a general rule, merge them into one corporation, or prevent the enforcement against the insolvent estate of the one of an otherwise valid claim of the other. As said by the Supreme Court of Arkansas in Lange v. Burke, 69 Ark. 85, 88, 61 S. W. 165, in holding, in a case where two corporations were practically controlled by the same stockholders and had had intimate business relations, including the employment of the same bookkeeper, that a claim of one corporation would be enforced against the insolvent estate of the other:

"A corporation is an artificial being, separate and distinct from its agents, officers, and stockholders. Its dealings with another corporation, although

it may be composed in part of persons who own the majority of the stock in each company, and may be managed by the same officers, if they be in good faith and free from fraud, stand upon the same basis, and affect it and the other corporation in the same manner and to the same extent, that they would if each had been composed of different stockholders and controlled by different officers."

And as said by the Circuit Court of Appeals for the Sixth Circuit in Richmond, etc., Const. Co. v. Richmond, etc., R. Co., 68 Fed. 105, 108, 15 C. C. A. 289, 34 L. R. A. 625:

"The contract company was a legal corporation, wholly distinct and separate from the railroad company. The fact that the stockholders in each may have been the same persons does not operate to destroy the legal identity of either corporation. Neither does the fact that the one corporation exercised a controlling influence over the other, through the ownership of its stock or through the identity of stockholders, operate to make either the agent of the other, or to merge the two corporations into one."

See, also, Waycross, etc., R. Co. v. Offerman R. Co., 109 Ga. 827, 35 S. E. 275; Crane v. Fry, 126 Fed. 278, 61 C. C. A. 260; Watson v. Bonfils, 116 Fed. 157, 53 C. C. A. 535; Fitzgerald v. Missouri Pac. R. Co. (C. C.) 45 Fed. 812; Goodwin v. Bodcaw Lumber Co., 109 La. 1050, 34 South. 74; Ex parte Fisher, 20 S. C. 179; White v. Pecos, etc., Co., 18 Tex. Civ. App. 634, 45 S. W. 207.

Unless, therefore, it can be shown that some exception to the general rule of separate corporate existence and liability applies in this case, it must follow that the claim of the Pulp Company should have been allowed. The only exceptions to that rule possibly applicable here are: (1) The legal fiction of distinct corporate existence will be disregarded, when necessary to circumvent fraud. (2) It may also be disregarded in a case where a corporation is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality or adjunct of another corporation.

Under the first exception the cases are numerous which hold that a person cannot transfer his property to a corporation to defraud its creditors, nor employ a separate corporate existence to evade his liabilities. But there is nothing in the record showing any fraud in the organization of the Pulp Company or in its operation or management. It does not appear that the Pulp Company absorbed the assets of the Paper Company. In fact, the balance presented as its claim by the Pulp Company is reached by deducting all the Paper Company's credits. It does not appear that creditors of the Paper Company gave it credit in the belief that it owned the property of the Pulp Company. Indeed, the record is barren of any facts from which fraud can be found or inferred. So the question is whether the case presented comes within the second exception to the rule—whether the Pulp Company was merely an adjunct of the business of the Paper Company, an agency or instrumentality through which it acted.

There is, as the appellees point out, a line of cases holding that, when one corporation creates another corporation for a particular purpose and holds all its stock, the latter will be treated as the agent of the former or as an instrumentality for carrying out its purposes. In these cases the controlling corporation has been held liable for the debts of the subordinate company. Interstate Telegraph Co. v. Balti-

more, etc., Telegraph Co. (C. C.) 51 Fed. 49, Id., 54 Fed. 50, 4 C. C. A. 184, in which a railroad company organized a telegraph company with small capital—all of which it held—as a department of its business and was held liable for its debts, is an illustrative case along this line. But the principles of those cases are only indirectly applicable here. Neither the Paper Company nor the Pulp Company own any of the other's shares, and in no sense can it be said that the Paper Company organized the Pulp Company as a department of its business.

Probably the strength of the appellees' contention can best be tested by applying the principles of that which is probably the most favorable case for them which they cite—Re Muncie Pulp Co., 139 Fed. 546, 71 C. C. A. 530, decided by this court. In that case a New York corporation, the stock of which was owned by two officers, engaged in a manufacturing business in Indiana and acquired certain gas and oil well properties there. It being desirable that a local corporation should be formed to acquire rights of way, such a corporation was organized, with the same stockholders as the first corporation, to which the latter transferred, without consideration, its gas and oil well properties. The local company kept no separate books, and its affairs were managed by the first corporation. The latter corporation went into bankruptcy, and it was held that the local company was merely the agent of the bankrupt corporation, and that its shares in the names of the officers, as well as its property, belonged in law to the bankrupt. In his opinion Judge Coxe said:

"The Great Western Company was undoubtedly a mere creature of the pulp company, having no independent business existence, and organized solely for the purpose of facilitating the business of the latter. The Great Western Company has no shadow of claim to the property in controversy, and to permit it, or its president, or shareholders, to dispose of such property, is to sanction a fraud upon the creditors of the pulp company."

But the present case is not at all like the Muncie Case, nor like any of the other cases cited by the appellees. As already shown, no element of fraud is present. The Paper Company did not in any legal sense furnish the money to build the Pulp Company's plant. It is true that it actually advanced the funds; but it did so for the account of the Remingtons. It was merely the conduit through which the Remingtons' money passed to meet their obligations. It does not appear that the Paper Company ever had the slightest claim—legal or equitable—to any of the stock of the Pulp Company. It is true that the two corporations mingled their affairs. A creditor of the one company might perhaps have a claim, based upon principles of estoppel, against the other. Lax business methods are clearly shown. Undoubtedly the controlling stockholders regarded the two corporations as being, in a general way, different departments of their business. But the separate corporate organizations were apparently kept up. Each corporation had its own creditors, its own assets, and conducted its business in its own name. Books of account were kept, showing their financial relations. The stockholders were not entirely the same. We cannot, upon these facts, hold that the corporations were identical, nor that the Pulp Company was merely an adjunct or

instrumentality of the Paper Company. Instead of coming under the exceptions, this case seems clearly to come within the general rule that the distinct corporate existence of two separate although associated corporations will be regarded by the courts.

For these reasons, we think that the claim of the Pulp Company should have been allowed against the bankrupt estate of the Paper Company.

### 2. The Claim of John B. Taylor.

The claim of John B. Taylor, as presented against the bankrupt estate, was for $28,498.33 upon certain notes and accounts which the Paper Company owed to various corporations and individuals, and which were assigned by them before the bankruptcy to the claimant. As already indicated, John B. Taylor acquired a majority of the shares of the Pulp Company in November, 1905, and later the remaining shares. He also acquired the shares of the Paper Company, which at that time was practically insolvent. Upon his purchase of these stock interests, Taylor found that notes and accounts of the Paper Company, to the amount of his claim as presented, were held by various banks and individuals, who held as collateral therefor bonds of the Pulp Company secured by a mortgage of its plant. Taylor purchased these secured debts of the Paper Company, took assignments thereof to himself in his own name, and acquired the collateral therefor.

Taylor now claims the right to present these assigned claims against the bankrupt estate as unsecured claims and to have them allowed as such. He admits that the value of the collateral which he acquired in purchasing the claims exceeds the amount thereof, and he concedes that, unless such claims can be allowed as unsecured, they should be rejected. The position of the claimant is thus stated in his brief:

"Taylor was no more a secured creditor after he took an assignment of these claims than he was before. In each instance he, as the owner of the H. Remington & Son Pulp & Paper Company, was the accommodation pledgor for the benefit of the Watertown Paper Company, and was compelled to take up and pay the obligations secured by the bonds to protect his own property."

Even assuming that the Pulp Company was the accommodation pledgor for the benefit of the Paper Company—which with respect to all the notes is not clear—and assuming that the legal position of the Pulp Company, in case it had paid the claims, would have been as stated by the claimant, his contention regarding his own position is wholly untenable. If any one thing is certain from the examination which we have already made, it is that a corporation is an entity distinct and separate from its stockholders. The fact that Taylor legally and equitably owned all the shares of the Pulp Company did not make him the corporation. He, as the owner of such stock, was not the accommodation pledgor for the benefit of the Paper Company. The Pulp Company itself was such pledgor. Taylor was under no legal obligation in the matter whatever. He was merely a person interested in the properties, who chose to buy secured claims against the Paper Company. By virtue of the assignments to him, he stood precisely in the position of his assignors, and became a secured creditor of the Paper Company. His claim was properly rejected.

The order of the District Court disallowing the claim of the Pulp Company is reversed, with costs.

The order of the District Court disallowing the claim of John B. Taylor is affirmed, with costs.

### On Rehearing.

PER CURIAM.   In the opinion in this case the contention of the claimant Taylor that he stood in the position of an accommodation indorser and took up the obligations and collateral in question to protect his own property was negatived, and it was shown that he acquired the rights, and only the rights, of his assignors.   Upon this petition the claimant insists that his assignors themselves were unsecured creditors of the bankrupt estate, and this contention has lead us to a further examination of the record.

If it were true that the Pulp Company had itself pledged its own bonds as security for its accommodation indorsements of the Paper Company's obligations, there would be force in the claimant's contention.   It might well be said that the banks and individuals receiving the collateral had no security as against the bankrupt—that their security was the property of the indorser and was upon the contracts of indorsement.   But we think this was not the situation.   We are satisfied that most of the bonds were delivered by the Pulp Company to the Paper Company to be used by the latter as collateral for its debts.   The record shows instances where the Paper Company itself pledged the bonds as security for its own debts, and authorized their sale in case of default.   Indeed, the Paper Company pledged the bonds as security for indebtedness toward which the Pulp Company bore no relation, as indorser or otherwise.   In our opinion the Paper Company acquired from the Pulp Company such special property in the bonds as warranted their pledge for the Paper Company's debts, and that upon such pledge they became in the hands of the pledgees "security upon the property of the bankrupt," and rendered such pledgees secured creditors.

It is possible that some of the items of the claim in question do not stand in precisely the situation just stated; but the evidence was insufficient to enable us to separate the items or apportion the collateral, and we were not asked to do so.

The petition for a rehearing is denied.