## In re HEYMAN.

(District Court, E. D. Pennsylvania. March 22, 1915.)

No. 4436.

1. BANKRUPTCY ⬦136—COLLECTION OF ASSETS—NONCOMPLIANCE WITH ORDERS—PUNISHMENT.

A noncompliance on the part of a bankrupt with an order requiring her to turn over to her trustee goods found to have been concealed by her does not necessarily require an order for an attachment against her, since

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the order to turn over the goods relates to, and may be wholly based upon, the facts existing at the time of the petition in bankruptcy, and may rest upon presumptions arising out of what the bankrupt has done, while an attachment for contempt must rest on conditions at the time of the commitment, and upon a finding of present contumacy, which must be based upon proof, and not on presumptive probabilities.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ☞136.]

**2. BANKRUPTCY ☞136--COLLECTION OF ASSETS—NONCOMPLIANCE WITH ORDERS—PUNISHMENT.**

Where the fact of contumacy on the part of a bankrupt in failing to comply with an order requiring her to turn over to her trustee goods concealed by her is clear, it is the court's duty to grant an attachment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ☞136.]

**3. BANKRUPTCY ☞136—COLLECTION OF ASSETS—NONCOMPLIANCE WITH ORDERS—PUNISHMENT.**

A bankrupt should not be subjected to an indefinite term of imprisonment under an attachment for noncompliance with an order requiring her to turn over goods found to have been concealed by her, upon a finding of a seriously controverted fact reached without the sanction and support of the verdict of a jury.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ☞136.]

In Bankruptcy. In the matter of Ruth Heyman, individually and trading as the Heyman Company, bankrupt. On motion for reargument of rule for attachment. Motion denied.

See, also, 214 Fed. 491.

Alfred T. Steinmetz, J. Howard Reber, and Abraham M. Beitler, all of Philadelphia, Pa., for trustee.

Joseph Singer, of Philadelphia, Pa., for bankrupt.

DICKINSON, District Judge. This motion was heard because the court recognized it to be prompted by the best of motives. The hearing took, as was natural, the form of a reargument of the whole question. The respect which every court feels for the opinion of the bar calls for a fuller statement of the reasons on which the refusal of an attachment in this case was based. Special value is given to the views expressed by the eminent counsel by whom the argument is voiced. The motion for a reargument is, however, based upon a misapprehension. This flows from a failure to read the judgment rendered, as every judgment should be read, in the light of the facts of the particular case in which the judgment is pronounced.

[1] An order was made on this bankrupt to turn over to her trustee goods to the concealment of which she was found to have been a party. Anticipating, however, the very situation which has now arisen, the court, in making the order, called attention to the distinction between making such an order and issuing an attachment for noncompliance. For obvious reasons, the court declined at that time to discuss the facts, contenting itself with confirming the report of the referee. The referee, in his findings and in the order recommended, was evidently and properly guided by the ruling made by Judge McPherson, then

sitting in the District Court, in the case of, In re Epstein, 206 Fed. 568, and Epstein v. Steinfield, 210 Fed. 236, 127 C. C. A. 54. The referee, having followed, as he was bound to do, the lines thus laid down for his guidance, could not be convicted of error, and the report was in consequence confirmed. It by no means follows, however, that because the order was made an attachment should issue for noncompliance. There is, it is true, a narrow path of logic which leads from order to commitment. The order has been made. Having been made, it should be obeyed. Noncompliance, therefore, merits punishment.

To so argue, however, ignores the distinction which, whatever may be the rule in other jurisdictions, Judge McPherson declares to prevail in the Third Circuit. An order to pay relates to, and may be wholly based upon the antecedent condition of facts existing at, the time of the petition in bankruptcy. The fact then found Judge McPherson calls the first fact. An attachment for contempt must, however, rest upon conditions at the time of commitment. The fact then found he calls the second fact. The one may rest upon presumptions arising out of what the bankrupt has done. The other is justified only by the finding of a present mental attitude. In a word—contumacy. A like distinction governs the practice in making these different findings. The referee receives the evidence and hears the testimony. From this he makes his findings and recommendation of an order. On review the court applies the well-known rule for determining the facts. This the court can with safety do. The finding that the bankrupt had the property at one time may carry the implication that he still has it. This is at most, however, a mere presumption, and may not only be overcome by proof, but its weight may be destroyed by the very evidence from which the first fact is found. An order which strips a man of his liberty cannot safely be based upon presumptive probabilities. The court which makes the order must take upon its conscience to find this second fact, and base the commitment on the finding. The distinction was applied in and is illustrated by the case of In re Krichevsky (D. C.) 219 Fed. 347.

There is involved, also, a rule of policy. This is disclosed by the Epstein Case. Trustees, creditors, and others concerned may well take the Epstein Case for their guidance. Armed with proof of the first fact, they may ask for an order to pay over, and make the best they can of this or any remedy in the nature of civil process within their reach. They may resort to the punitive provisions of the Criminal Code. Sentence then follows the findings of a jury. If they ask for a commitment otherwise, the second fact must be in the case. The mere existence of the first order calls for a commitment only when the proof of the first fact carries with it a finding of the second. A commitment based on the first fact without the second is nothing less than imprisonment for debt. This was truthfully said to be "its practical side, and the only practical side it had."

[2, 3] Where the fact of contumacy is clear, the duty laid upon the court is inexorable. It is not made clear by the mere fact that the first order has been made. The fact for the purposes of an attachment is not established by the findings of a referee. Since this case arose,

provision has been made by Act Oct. 15, 1914, c. 321, § 22, 38 Stat. 739, for the determination by a jury of the facts in certain contempt proceedings. Such a finding carries a sanction in cases involving personal liberty which no other finding does. It was this thought which introduced the qualification into the conclusion before reached. It will be observed that the statement was expressly confined to the special features of this case, wherein we have only the referee's finding of the first fact and the court's order thereon. To this conclusion we still adhere, that under all the features of this case this bankrupt— "should not be subjected to an indefinite term of imprisonment based upon a finding of a seriously controverted fact reached without the sanction and support of the verdict of a jury."

We feel called upon to add that this had sole reference to the inability of the court to find the second fact against the bankrupt, and to the argument addressed to us that we should find it from the referee's report and the former order of the court, which was expressly based upon a finding of the first fact. We wish further to add, because of comments in which the kindness of heart of counsel prompted them to indulge, that considerations of sex and the maternal responsibilities of this bankrupt, while they have affected, have not influenced, the court. These spring from the quality of mercy, not that of justice.

The order discharging the rule for an attachment will stand.