PECKETT et al. v. WOOD et al.

(Circuit Court of Appeals, Third Circuit. June 8, 1916.)

No. 2120.

1. CORPORATIONS ⬤627—INSOLVENCY—PROVABLE CLAIMS—INDEBTEDNESS TO STOCKHOLDERS.

Claims against a corporation for money advanced to it by its sole stockholders, for which notes were given, some of which were secured by collateral, *held*, under the evidence, provable against it in a suit to wind up its affairs, on an equality with other general debts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2476; Dec. Dig. ⬤627.]

2. CORPORATIONS ⬤1—INDEBTEDNESS TO STOCKHOLDERS—DISREGARDING CORPORATE ENTITY.

Although under some circumstances corporate entity may be disregarded in equity, it is only when necessary to circumvent fraud, or in cases which proceed on the theory of estoppel, or where a corporation is merely an agency of another, and it is sought to enforce debts of the latter against property ostensibly owned by the corporation, or debts of the corporation against its owner.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1, 3–6; Dec. Dig. ⬤1.]

Appeal from the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Suit in equity by Charles R. Wood and others against the Florence Iron Works. From an order allowing claims of Walter Wood and the estate of Stuart Wood, Leonard Peckett, Edward L. Herndon, and W. Howard Ramsay, as a creditors' committee, appeal. Affirmed.

Henry P. Brown and W. B. Bodine, Jr., both of Philadelphia, Pa., for appellants.

Wm. A. Glasgow, Jr., J. H. R. Acker, and Conlen, Brinton & Acker, all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the matter of the receivership of the Florence Iron Works the court below entered a decree confirming the master's report and findings that the claims of Walter Wood for $461,255.88, of R. Francis Wood for $64,664.86, and of Stuart Wood's executors for $101,552.50, "be allowed and added to the list of claims heretofore approved by the receiver and confirmed by the court." Assuming, but without deciding, such decree was one from which an appeal lay to this court, all parties have acquiesced in that view, and a committee of the creditors of the Florence Iron Company have taken this appeal.

[1, 2] The facts of the case have been heretofore set forth in the opinion of the court below, which is given in full on the margin.[1] As there stated, the case finally narrows to two questions of fact, summarized in that opinion as follows:

"The only reasons urged as to why the special master's report should not be confirmed and the claim allowed are: (1) That the moneys advanced by the claimants, upon which their claims are based, were not loans to the corporation, but rather were payments in advance for its capital stock to be thereafter issued; and (2) that the relationship existing between the claimants and the corporation was such that the claims of the former, in any event, should be postponed in payment to the claims of the other creditors."

On those two questions this court has had the enlightening help of a very thorough discussion of the proofs by the master in his elaborate report, of the court below in its careful review of the master's work, and of the earnest argument of counsel for the creditors' committee, challenging both the master's report and the court's opinion. After a careful examination on our own part of the proofs, and on due consideration had, we are led to concur in the findings of fact and the conclusions reached below, and to hold that the court committed no error in its decree. In view of the elaborate opinion rendered both by the master and that court, and of the expressed desire of all parties for a decision in timely advance of a pending sale of the company's plant, we restrict our opinion to simply announcing our conclusion as above stated, feeling as we do that anything said further by this court would in the nature of things be but a repetition of what has already been said by the master and elaborated by the court.

We may add that, with a view to its early decision, this case was taken up the first on the list, and all the proofs have had the careful personal attention of each of the judges. We deem it proper to make this statement, so that the promptness of the decision and the brevity

[1] See note at end of case.

of the opinion shall not be regarded as indicating a lack of that due consideration which the case deserves and has had.

NOTE.—The following is the opinion of Haight, District Judge, on exceptions to the report of Harold B. Wells receiver of Florence Iron Works, as special master, recommending the allowance of the claims presented against the defendant corporation by Walter Wood, individually and as trustee, and the estate of Stuart Wood:

HAIGHT, District Judge. The only reasons urged as to why the special master's report should not be confirmed and the claim allowed are: (1) That the moneys advanced by the claimants, upon which their claims are based, were not loans to the corporation, but rather were payments in advance for its capital stock to be thereafter issued; and (2) that the relationship existing between the claimants and the corporation was such that the claims of the former, in any event, should be postponed in payment to the claims of the other creditors. After carefully reading all of the evidence and exhibits presented to the special master, and considering the arguments of the respective counsel, I have reached the conclusion that the special master's determination is correct, both in respect to the existence of valid and enforceable obligations of the claimants against the corporation, as well as their right to share proportionately with the other creditors in the distribution of its assets.

The Florence Iron Works was incorporated under the laws of New Jersey in 1873. Only 1,250 shares of its authorized stock, of the par value of $100 each, were issued. All of these shares, at the time the bill in this case was filed, as has been the fact for some time previous thereto, were owned by Walter and Stuart Wood, with the exception of a very few, which were distributed among other persons, admittedly for the purpose of qualifying the latter to act as directors. Walter had about three times as many shares as Stuart. The board of directors were five in number, two of whom were Stuart and Walter. The other directors, I think, may be properly considered, as they are commonly termed, 'dummies.' The corporation, which was originally formed for the purpose of distributing the real estate belonging to R. D. Wood among his heirs, had been for many years engaged in manufacturing various iron products, all of which had always been marketed through or by the firm of R. D. Wood & Co. The latter was a partnership composed, during a number of years preceding the filing of the bill in this cause, of Walter Wood and Stuart Wood, although at various times previously there had been other members. There had for a great many years existed between this firm and the corporation an arrangement whereby the latter paid the former's expenses of selling its product and purchasing its supplies, and the former received one-half of the profits realized by the corporation from its business, and bore one-half of the losses, if in any given year losses were sustained. From time to time, as the business of the corporation expanded and necessitated more working capital, moneys were advanced by Stuart Wood and Walter Wood and by the trust estate of Juliana R. Wood. These moneys are the basis of the three claims in controversy. In each case, as the advances were made, demand promissory notes of the corporation, bearing interest, were delivered. Certain securities were pledged for the payment of two of the notes given to Walter Wood, individually, as was the case in respect to all of the moneys advanced by the estate of Juliana Wood. All of the notes given to Stuart Wood were indorsed by either Walter Wood or R. D. Wood & Co. From time to time payments were made on account of the principal of the moneys so advanced by Walter Wood and Stuart Wood, and all of the interest which accrued was likewise paid, sometimes in the form of new notes. The notes were always carried on the books of the corporation among the "bills payable."

The evidence upon which the exceptants rely to support their contention—that the moneys so advanced were not loans—consists of certain testimony given by Walter Wood during a trial of a controversy between himself and the executors of Stuart Wood in the common pleas court No. 2 for the county of Philadelphia, certain averments in an answer filed by him in that suit, and certain statements made by him to a representative of a commercial agency. As to the latter it should be noted that there is no evidence what-

ever that any creditor was misled thereby. In fact, it is difficult to see how any creditor could have been misled, even if the evidence showed that the mercantile report had been brought to his attention prior to the time he extended his credit. All that the report shows is that two of these claims—that is to say, the individual claim of Walter Wood and that of Stuart Wood—are referred to as "contributions to capital." They were listed among the liabilities and went to make up the total thereof. The capital stock which was issued was not so listed. I think, therefore, that any creditor examining this report would undoubtedly consider these claims as subsisting liabilities of the corporation, and not in the category of capital stock. There is no competent testimony to overcome the presumption of indebtedness to the estate of Stuart Wood, which arises from the existence of the notes upon which the claim is based. The statements made by Walter Wood before mentioned are, of course, not competent evidence against the estate of Stuart Wood. This is not disputed. I think the same may be said of the claim filed by Walter Wood as trustee. Consequently, in so far as these claims are concerned, the objection now under consideration may be eliminated.

It would be difficult, however, to reconcile the averments of the answer in the suit before mentioned, if the same stood alone, with the evidence of a debt due from the corporation to Walter Wood individually. But it must be borne in mind that this answer, although admissible as evidence against Walter Wood, because it was under oath (Pope v. Allis, 115 U. S. 363, 6 Sup. Ct. 69, 29 L. Ed. 393), was prepared by counsel in legal verbiage as a pleading, and should not, therefore, be given the same weight in determining a fact as Mr. Wood's sworn testimony, and that it must be considered in connection with and in the light of such testimony, as well as that of all the other facts and circumstances. The answer was verified on December 12, 1914; yet nearly two months before that time Mr. Wood had made an affidavit in this proceeding that both he and Stuart Wood were creditors of the corporation to the extent of the claims now in question. Mr. Wood's previous history and appearance does not admit of the belief that he is either a fool or a willful perjurer, and it would be necessary to find that he is one or the other, if the averments of the answer in the Pennsylvania suit are to be taken literally. At practically the same time that he made the affidavit in this suit he testified at length in the Pennsylvania suit regarding these claims. Without attempting to review that testimony, its purport, taken as a whole, is, as I construe it, that these averments were made to provide money which the necessities of the corporation's business, due no doubt to its growth, required, with the idea eventually that they could and might be liquidated by the issuance of stock. All of his references to "contributions to capital" must be construed in the light of the existing circumstances. It is quite manifest that a concern, doing the volume and character of business that this corporation was, would require more capital than $125,000. There were two ways of providing such additional capital: One to issue capital stock, and the other to borrow money upon securities or otherwise. Of course, if the latter means was adopted, it was necessary that the corporation should not be required to repay the loans in short periods of time.

This latter course was followed, rather than that of issuing capital stock; and, considering that practically all of the capital stock of the corporation was owned by Walter Wood and Stuart Wood, it is not difficult to understand why. They probably had in mind that at some future time it might be necessary or advisable to liquidate the indebtedness by issuing capital stock. This is exactly what Walter Wood tried to induce the executors of Stuart Wood to consent to at the two stockholders' meetings held during the summer of 1914. The latter declined to do so, and thereupon, according to the minutes of the last of those meetings, Walter Wood took the position that it might be necessary for him to take steps to procure the payment of his own indebtedness. Nowhere in the minutes of those meetings does there appear a suggestion that there was an agreement or understanding that these moneys were advanced on account of the purchase price of stock to be thereafter issued. The very fact that the notes were given, that interest was paid thereon, that in some cases payments were made on account of principal, that collateral was pledged as security for some of the loans, and that security by way of

indorsements were given to Stuart, seems to me to indicate, without any reasonable doubt, that there was no such agreement, but, at the most, that there was a mere understanding, as Mr. Wood testified in Philadelphia, that the indebtedness "could be converted into stock." And this is in accordance with Mr. Wood's testimony in this case, and it seems to me that it has every consideration of reason and probability to support it. In reaching this conclusion I have not been influenced by the lack of evidence that the corporation, as a separate and distinct entity from Walter and Stuart Wood, formally acquiesced in an agreement such as the exceptants contend was made. I place my decision squarely on the proposition that I cannot find that there was ever any definite agreement or understanding between any of the parties that the moneys which were advanced, and for which the corporation issued its promissory notes, were not to constitute a valid indebtedness of the corporation to those to whom the notes were issued.

It remains to consider the exceptants' second proposition. In doing so it must be primarily borne in mind that this is not a case where the creditors of the corporation are seeking to collect their claims from R. D. Wood & Co.; nor are we concerned with the question as to whether the validity of the contracts between the corporation and R. D. Wood & Co. may be challenged by a creditor, under the general rule as laid down in Stewart v. Lehigh Valley R. R., 38 N. J. Law, 505, and Thomas v. Brownville R. R. Co., 109 U. S. 522, 3 Sup. Ct. 315, 27 L. Ed. 1018, because the members of the firm of • R. D. Wood & Co. were also directors of the corporation. The exceptants contend, in the first place, that there existed in fact, as distinguished from estoppel, a partnership between the firm of R. D. Wood & Co., its individual members, and the corporation, and hence that none of the partners can be repaid advances until the firm creditors are paid. They rely upon the decision of the Circuit Court of Appeals of this Circuit in Wallerstein v. Ervin, 112 Fed. 125, 50 C. C. A. 129 (affirming that of Judge McPherson, reported in Re Ervin [D. C.] 109 Fed. 135), to overcome the difficulty which is presented by the general rule that a corporation is without power to enter into a partnership, and that all contracts to that end are ultra vires and void. But, clearly, neither the principle which that case recognizes and applies, nor the basic one of partnership law, before mentioned, which exceptants invoke, is applicable unless a partnership did exist. The latter question has been determined against the exceptants by the special master. His report on this phase of the case contains a very careful and satisfactory analysis of the facts and law. I see no necessity, especially in view of the urgency of a prompt decision, for reiterating or attempting to add anything to what he has so well stated.

In the next place the exceptants urge that the corporation was but an adjunct or agency of R. D. Wood & Co., and hence that the legal entity of the corporation should be disregarded, and the claims in question postponed in payment to those of other creditors, because they in reality represent advances made to one branch of a partnership by its members. In support of these contentions exceptants rely upon the following cases: In re Muncie Pulp Co., 139 Fed. 546, 71 C. C. A. 530 (C. C. A. 2d Cir.), In re Rieger, Kapner & Altmark, 157 Fed. 609 (D. C. S. D. Ohio), and Hunter v. Baker Motor Vehicle Co., 225 Fed. 1006 (D. C. N. D. N. Y.). In considering these cases it should be noticed that no claim is made in this case that the corporation was formed for any fraudulent purpose, or that there was any fraud in the dealings between it and R. D. Wood & Co. In the Muncie Pulp Company Case it was found that property ostensibly owned by a corporation had been transferred to it by the bankrupt corporation without consideration and merely for the purpose of better enabling the latter to handle the same. There were no creditors of the first corporation. Its stock had been issued to the two persons who owned and controlled all of the stock in the bankrupt company, also without consideration, as a matter of form and convenience, and all of its assets came from the bankrupt. Under these circumstances it was held that the first corporation had no claim to the property in controversy, but that it held it in trust for the bankrupt. Likewise in the Rieger, Kapner & Altmark Case the relief sought and granted was to bring under the administration of the court, in which the affairs of the bankrupts were being settled,

property of a corporation the capital stock of which was absolutely owned and controlled by the bankrupts, on the theory that such property, because of such ownership of the stock of the corporation, in reality belonged to the bankrupts, and that it would be a fraud on the creditors of the bankrupts to permit it to remain in the latter's possession. The question of the respective rights of the creditors of the corporation and those of the bankrupts in the property of the former was reserved. It is thus apparent that those cases fall far short of being authorities for the broad proposition for which exceptants cite them. In Hunter v. Baker Motor Vehicle Company, it was held, in effect, that a creditor of one corporation, under the peculiar facts of that case, might sue another, because the former (the ostensible debtor) was, in reality, merely an instrumentality or adjunct of the latter.

The only principle, I think, upon which these otherwise valid claims may be postponed in payment to those of other creditors is one which would at the same time permit the other creditors of the corporation to collect their claims from R. D. Wood & Co. In re Watertown Paper Company, 169 Fed. 252, 94 C. C. A. 528 (C. C. A. 2d Cir.). Such being the test, can it be that the creditors of this corporation could recover against R. D. Wood & Co. on the facts in this case? I think, clearly, they could not. As set forth in the special master's report, credit was extended to the Florence Iron Works, contracts were made and business conducted in its name, and prospective creditors were notified that the corporation was alone responsible. R. D. Wood & Co. acted merely as selling, and in some cases purchasing, agents for the corporation, as well as for others in which the individual members of the firm were interested as stockholders and otherwise. Their respective affairs, books, and accounts were kept separate and distinct; each had its own book account and paid its own bills; their creditors were different, and their business generally conducted as though they were entirely separate concerns with close business or financial relations. In fact, the relationship and method of conducting business was by no means unusual. Although, as was said in the Watertown Paper Company Case, supra, in some cases, when necessary for the furtherance of justice in one way or another, corporate entity may be disregarded where the corporation is so organized and controlled and its affairs are so conducted as to make it merely as instrumentality or adjunct of another concern, yet this is an exception to the general rule and fundamental principle that a corporation is an entity, separate and distinct from its stockholders, and from other concerns with which it may be connected. Instances where the exception has been held applicable may be found in some of the before-mentioned cases. An instance where the exception was held not applicable, and which, because of similarity of facts, is pertinent to the case at bar, is In re Watertown Paper Co., supra. The facts in that case are more favorable to exceptants' contention than the facts in this. Except in cases where it is necessary to circumvent fraud, or in cases which proceed on the theory of estoppel, or those where it is sought to take possession of property ostensibly belonging to a corporation entirely controlled and owned by the principal debtor, for the purpose of protecting the creditors of the latter, as well as the former, it will be found that the instances are rare indeed where the general and settled rule of separate corporate identity is disregarded. This is not, as I conceive it, such a case.

The exceptions to the special master's report will accordingly be overruled, and the report confirmed, but without prejudice to the right hereafter of either the receiver or any creditor, before any dividends are paid upon the claims in question, to have any offsets, to which the claims may be subject, deducted therefrom.