### In re IRON CLAD MFG. CO.

(District Court, E. D. New York. March 15, 1912.)

1. BANKRUPTCY (§ 293*)—RECOVERY OF ASSETS—PLENARY SUIT—JURISDICTION.

A plenary suit against a third person to assert title to money or property claimed as assets of the bankrupt can be brought only in a court having jurisdiction generally over such a suit, and cannot be maintained as a step in the bankruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. BANKRUPTCY (§ 293*)—RECOVERY OF ASSETS—BANKRUPTCY COURT—JURISDICTION.

The bankruptcy court, in the exercise of its jurisdiction to cause the assets of the bankrupt to be collected, may compel the bankrupt or his agent to deliver money or assets of the bankrupt's estate, and by summary proceedings compel the surrender of the property where there is no bona fide claim of adverse title, but not so if the person in whose hands the property is claims a right of property or possession therein in good faith.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.*]

3. BANKRUPTCY (§ 293*)—ASSETS—POSSESSION—ADMINISTRATION.

A court of bankruptcy may recover property of the bankrupt in summary proceedings if it is held by the bankrupt's agent or bailee without claim of title, or if it has been fraudulently transferred to some other person, and can be traced into the hands of the latter and the court's jurisdiction is consented to, or in spite of objection if the fraud is indisputable on the record, or where it appears that an independent corporation or agent has property to which no title is claimed or over which it is necessary to extend a restraining order or receivership to prevent irreparable injury until the property over which the court has jurisdiction can be located and disposed of.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.*]

4. BANKRUPTCY (§ 288*)—PROPERTY OF BANKRUPT—RECOVERY—SUMMARY PROCEEDINGS.

Facts held insufficient to show that the claim of third persons to certain assets, alleged to belong to the bankrupt, was so clearly unfounded on the face of the record as to authorize a determination thereof by a court of bankruptcy in summary proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 444–447; Dec. Dig. § 288.*]

In the matter of bankruptcy proceedings of the Iron Clad Manufacturing Company. Renewal of an application for an order to compel the American Steel Barrel Company and Elizabeth C. Seaman, individually and as president of such corporation, to turn over to the bankrupt's trustee the stock certificates, books, and assets of the American Steel Barrel Company for administration as assets of the bankrupt. Application denied.

See, also, 193 Fed. 781.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Whitridge, Butler & Rice (John A. Garver, Edwin T. Rice, and Charles A. Riegelman, of counsel), for petitioning creditors.

Leo Oppenheimer, for unsecured creditors.

Adolph Kiendl, for receiver.

James A. Allen, specially, for respondents American Steel Barrel Company and Elizabeth C. Seaman.

CHATFIELD, District Judge.[1] The present application is a renewal of a motion made herein in June, 1911, based upon an order to show cause why the American Steel Barrel Company, a corporation, and Elizabeth C. Seaman, individually and as president of the American Steel Barrel Company, should not turn over to the receiver in bankruptcy of the Iron Clad Manufacturing Company all stock certificates, books, records, documents, manufacturing plant, machinery, tools, property, and assets of the American Steel Barrel Company. The trustee of the Iron Clad Manufacturing Company has now been brought in as the proposed recipient or person alleged to be entitled to this property; the papers having been finally submitted upon February 8, 1912.

On the first hearing, on June 20, 1911, the respondents, the American Steel Barrel Company and Mrs. Seaman, appeared specially by their attorney, and objected to the power and jurisdiction of this court to consider the matters raised by the moving papers. The minutes of the court (which were not included in the record used upon review by petition to the Circuit Court of Appeals) show that the respondents, citing Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, claimed that the court was without power in this summary way to determine the issues raised or to grant any part of the relief asked for. The court directed the respondents to go on with the proceedings, and reserved a ruling upon the objection to jurisdiction based upon their special appearance, until it could be seen whether they could show a bona fide claim of title to the property claimed and possessed by them. The court held that at the outset it must pass upon the record then presented, and determine whether or not the property sought was that of the alleged bankrupt, holding that, if the property were that of the alleged bankrupt, the court had jurisdiction to make a summary order. There being opportunity upon the final submission for but a cursory examination of the papers, the motion was denied with leave to renew or transfer to another judge, in order that a careful consideration of the record might be had. The application to another judge, for a transfer of the motion and reconsideration thereof, was denied, but no order was entered

[1] Before any order was entered upon this opinion, the creditors made an application for further hearing. They then filed an affidavit of bias, under section 21 of the federal Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1090 [U. S. Comp. St. Supp. 1911, p. 133]), and asked before Judge Mayer (to whom the case was sent for further conduct thereof) for leave to present witnesses and testimony on a renewal of the motion. Judge Mayer was unable to hear the witnesses personally, and has referred to a special master the issue of whether the creditors can show the claim of title to be merely colorable, and this reference is now proceeding.

thereon, and subsequently, in order to enable the petitioners to bring the motion on again before the writer, if it were wished, an order was made denying the motion without prejudice, and with leave to renew upon the same or additional papers. At the same time the court refused to sign an order presented as an alternative, which, in effect, suggested apparently a withdrawal of the court's previous conclusion that a cursory examination of the record seemed to show a claim of title by a third party in possession, and provided that the question as to the bona fides of that claim should be sent to a referee as special commissioner to pass upon this question for the court. In refusing to sign this alternative order, which seemed unnecessary as the court had indicated its willingness to hear the renewal motion itself, the court made the following memorandum:

"As the motion was denied for lack of jurisdiction (inasmuch as the papers did not show ownership by the Iron Clad, but only an apparent indebtedness to the Iron Clad, or an investment by the Iron Clad in the Barrel Co. and an apparent ownership of both companies by a person who is solvent and responsible for her acts individually and as an officer and director) I do not see how the issues can be referred. A question of title is involved requiring a plenary suit unless fraudulent concealment of assets by the Iron Clad (acting through those operating it) is shown. Any further examination under 21a can be had or a Master may be appointed to take testimony offered on a renewal of the motion on proper allegations, but for such relief a separate order should be made.        "T. I. C..

"U. S. J."

It appears by the record that a review of these proceedings was had without including either the minutes of the proceedings upon the first motion, or a statement of the submission of this alternative order and the circumstances under which the memorandum opinion just quoted was made. The Circuit Court of Appeals (191 Fed. 831) thereupon handed down its opinion and issued a mandate to the effect that the previous order, in so far as it held that the court did not have jurisdiction to summarily determine whether the claim of the third party was bona fide, should be reversed, and that the court should proceed to exercise that jurisdiction. The court having previously so done, and feeling that the Circuit Court of Appeals had not had the entire record before it, then placed upon the calendar for rehearing the original motion, in accordance with the privilege which had been given to the petitioners and appellants in the order appealed from, and upon this rehearing an amended petition, setting up the previous record and at the same time referring to an adjudication had in bankruptcy in the matter of the petition against the Iron Clad Manufacturing Company, upon the 2d day of December, 1911, was filed. This amended and supplemental petition recites the various matters upon which the petitioning creditors now rely to show that the entire property of the American Steel Barrel Company should be considered as assets of the Iron Clad Manufacturing Company. The respondents, namely, the American Steel Barrel Company and Mrs. Seaman, individually and as president of the American Steel Barrel Company, have interposed objections and filed various affidavits or answers to the summary inquiry, while still insisting on their plea that the court is without jurisdiction to pass upon the claim of title to the property in their posses-

sion. They have also objected to a rehearing of the motion, upon the ground that this court upon the former hearing passed summarily upon the question of the bona fides of the respondents' claim to the property, and that the so-called "reversal" by the Circuit Court of Appeals did not affect that ruling, inasmuch as this court had not refused to entertain that jurisdiction.

This last objection was overruled in open court, upon the 15th day of December, 1911, under the previous order of this court expressly allowing a renewal of the motion. The respondents thereupon interposed, under their special appearance and allegations of possession, a claim that all the property involved in this motion belonged to the American Steel Barrel Company, and was not that of the Iron Clad Manufacturing Company or of its creditors; also, that the capital stock of the American Steel Barrel Company was at the time of the argument of this motion the property of one George A. Wheelock, who also appeared and claimed all of this stock by purchase for value from Elizabeth C. Seaman, the previous owner, except four shares. It is alleged that one share has been retained by Mrs. Seaman in order to qualify her as a director.

At a further hearing, upon the 22d day of December, 1911, an opportunity was given to both parties to call witnesses upon the issue raised for summary determination, namely, as to whether the claim by the American Steel Barrel Company to the property, and by George A. Wheelock to the stock previously owned by Elizabeth C. Seaman, was a bona fide claim of title, or was so fraudulent as to be invalid upon the face of the record, and to be in that sense a colorable title only. No testimony was presented other than that contained in the affidavits and answers filed by the respondents and in certain reply affidavits presented on behalf of the creditors and submitted with their brief upon the 8th day of February, 1912. Before analyzing the matters set forth in these affidavits, certain questions perhaps should be stated as premises.

[1] Under the decision in Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, the proposition has remained settled that a plenary suit against a third party to assert title to money or property claimed as assets of the bankrupt can be brought only in a court having jurisdiction generally over such plenary suit, and cannot be maintained as a step in the bankruptcy proceedings.

[2] In White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183, Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, and Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, it was decided that the bankruptcy court has jurisdiction to cause the assets of the bankrupt to be collected; that is, to compel the bankrupt or his agent to deliver up money or assets of his estate, and by summary proceedings to compel the surrender of that property, where no adverse claim (that is, no bona fide claim, of adverse title, as opposed to mere actual possession) exists, as a step in the bankruptcy proceeding. In the last case the court, upon page 15 of 184 U. S., page 275 of 22 Sup. Ct. (46 L. Ed. 405), says:

"But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt, the bankruptcy court

had the power to ascertain whether any basis for such a claim actually existed at the time of the filing of the petition."

As was said in the case of Bryan v. Bernheimer, supra, a purchase of property claimed as a part of the bankrupt estate by a person having knowledge of that claim cannot give the purchaser any claim of title superior to that of the person from whom he bought.

In the present instance the title and claim of Mr. Wheelock to the stock of the American Steel Barrel Company is no better nor greater than that of Mrs. Seaman individually thereto. The actual purchase by Mr. Wheelock is attacked by the creditors as improbable, but upon his statement that he has paid Mrs. Seaman therefor, and upon the apparent obligation which he has thereby assumed, it would seem that it makes no difference if he has paid over the $25,000 purchase price for the stock and taken the risk of losing that consideration, if the stock belongs to the Iron Clad Manufacturing Company or its creditors. If the claim of Mrs. Seaman and of the American Steel Barrel Company to its property and to this stock be a bona fide claim, then the sale to Mr. Wheelock is valid as against Mrs. Seaman, until such time as the title of Mrs. Seaman and the American Steel Barrel Company may be successfully assailed in a suit at law or an action in equity. But his title is no better and no greater than theirs.

We have, therefore, only to consider the transfer to Mr. Wheelock, in so far as it may be evidence upon the question of bona fides. As to this, the creditors point out that Mr. Wheelock is by profession a bookmaker, and a resident of the upper part of New York, who has not taken over the management of the property nor had himself elected a director, but left it in the hands of Mrs. Seaman. These charges bear directly upon the probability of Mr. Wheelock having invested in the property with the chance of losing the amount of his investment, but do not throw much light upon the question as to whether or not this property bought by him with knowledge of the creditors' claims was that of the Iron Clad Manufacturing Company.

But, before disposing of the question of this sale of stock to Mr. Wheelock, we must proceed a little further in an attempt to follow down the decisions of the courts in determining and stating the power of a bankruptcy court to take possession of property in the hands of persons who on the one hand are alleged to be mere agents for the bankrupt, and, on the other hand, hold themselves out to be owners and claimants under a title which gives them the legal right to retain possession as against the receiver or trustee, until their title is defeated.

In the Matter of Friedman, 161 Fed. 260, 88 C. C. A. 306, the Circuit Court of Appeals in the Second Circuit approved of a summary order to third parties, directing them to pay over sums of money claimed by some of them to be their own, and the possession of which even was denied by certain of the third parties. The lower court had decided these questions after a hearing against the respondents, and the Circuit Court of Appeals, under the authority of Mueller v. Nugent, 184 U. S. 1, 22. Sup. Ct. 269, 46 L. Ed. 405, directed the property to be turned over, although there is an indication that the opinion of the Circuit Court of Appeals was based upon the failure of these parties to ob-

ject to the jurisdiction of the bankruptcy court to determine the question summarily, as to whether the property was that of the bankrupt. Similarly, in the case of In re Berkowitz, 173 Fed. 1013, the bankruptcy court ordered certain property in the possession of the Berkowitz Tailoring Company, a corporation, to be seized by the receiver of one Berkowitz, upon evidence that the property of Berkowitz had been turned over to the corporation, and that the corporation had apparently been organized by the bankrupt's brothers as an instrument to enable the bankrupt to carry out a concealment of his assets. The record shows that the brothers of the bankrupt had invested some $2,000 in the capital stock of the corporation, and that the bankrupt had invested $25. The court made no attempt to interfere with the corporation nor its capital stock, but upon evidence showing palpable fraud in the operations of this corporation by Berkowitz, and, in the absence of any objection to the jurisdiction of the court, it was held that the bankrupt was using and was allowed to use the independent corporation as a cloak for his own operations. Hence the court said that any property plainly his own, but as to which the corporation was being used as his agent, was subject to a restraining order, and, as between the bankrupt and his own creditors, was liable to seizure for the payment of his debts in the bankruptcy proceeding. Also, in the Matter of Kane, 131 Fed. 386, certain moneys in the hands of a third party, but shown (after a consideration of the evidence) to be the property of the bankrupt and to be held by the third party merely as agent or bailee, were ordered turned over to the receiver or trustee where the asserted adverse claim was found merely colorable. The court says:

"If the claim is asserted in good faith, substantiated by verified pleadings or by oral testimony, then the objection to the jurisdiction of the court is controlling."

But the balance of the opinion shows that this language is intended to mean that unless the court, upon the verified pleadings or testimony, can find that the claim was not asserted in good faith, the objection must be sustained.

The next case which we must consider and which enunciated the doctrine upon which most of these proceedings are based is In re Muncie Pulp Co., 139 Fed. 546, 71 C. C. A. 530, decided by the Circuit Court of Appeals for this circuit. A corporation, through its officers, caused the organization of another corporation in order to comply with certain state laws, and caused themselves to be made officers of the new corporation. Certain property of the old corporation was transferred to this new corporation, and it was managed by the officers and directors, in order to carry out the business and purposes of the old corporation. The capital stock of the new corporation was held in the name of the officers of the old corporation, and the entire activities of this new corporation were in reality but the transactions of an agent holding this property of the original corporation for its benefit and use. Upon these facts, an application was made to compel the transfer of the capital stock of the new corporation, and the property which had been previously transferred from the

original corporation which was then in bankruptcy. The court based its' decision upon the apparent conclusion that the whole transaction had been a transfer of the bankrupt's property to an agent, and that, therefore, the court had jurisdiction to order the property of the bankrupt, in the possession of a bailee or agent, delivered into the custody of a receiver.

Later, in the case of In re Holbrook Shoe & Leather Co., 165 Fed. 973, the bankrupt's trustee filed a petition for a direction to the Packard Shoe Company to turn over to the trustee in bankruptcy certain property within its possession which it was alleged to hold as agent of the bankrupt corporation. It was shown that the Packard Shoe Company had been organized for taking over the stock and property of the bankrupt corporation, in order to hinder and defraud the creditors of the bankrupt; that this was done at a time when the bankrupt corporation was insolvent; that the property of the new corporation had been derived from the bankrupt corporation; and that 800 shares out of a possible 1,000 had been transferred as consideration for this stock of goods from the new corporation to the bankrupt. The evidence also showed that the new corporation was apparently arranging to dispose of its property and had passed a resolution directing its sale under circumstances which of themselves would arouse suspicion. The court upheld the order of the referee under these circumstances restraining the sale of the property of the Packard Shoe Company, and holding that the property of the Packard Shoe Company should be turned over to the trustee.

In the decision of the Circuit Court of Appeals for the Second Circuit, in the case of In re Watertown Paper Co., 169 Fed. 252, 94 C. C. A. 528, we reach the other side of the question. There the court says:

"Unless, therefore, it can be shown that some exception to the general rule of separate corporate existence and liability applies in this case, it must follow that the claim of the Pulp Company should have been allowed. The only exceptions to that rule possibly applicable here are: (1) The legal fiction of distinct corporate existence will be disregarded, when necessary to circumvent fraud. (2) It may also be disregarded in a case where a corporation is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality or adjunct of another corporation."

In that case the court refers to the Muncie Pulp Co. Case, supra, but holds that the case under consideration is not like that of the Muncie Pulp Company. In the Watertown Paper Co. Case, supra, the money to furnish the Pulp Company's plant was advanced from the Paper Company, and was charged to certain individuals, who controlled and were large owners of the Paper Company. The Pulp Company corporation was, the court says, a conduit through which the money of these parties passed to meet their obligations. The two corporations mingled their affairs, but it did not appear that the Paper Company had any claim, legal or equitable, to the stock of the Pulp Company. The controlling stockholders regarded the two corporations as being in a general way different departments of their business. The stockholders were not entirely the same. Each corporation had its own creditors, its own assets, and conducted its business in its own name. Books of account were kept, and the two corpora-

tions were apparently managed and conducted as different departments of one considerable business, of which the people referred to as the Remingtons were the controlling stockholders. The court calls attention to the line of cases holding that when a corporation creates another corporation for a particular purpose, and holds all its stock, the latter will be treated as the agent of the former, or as an instrumentality for carrying out its purposes. In these cases the controlling corporation has been held liable for the debts of the subordinate company. But, as was pointed out by the Circuit Court of Appeals, that principle did not apply to the Paper Company Case, nor does it apply in the present instance, for here the so-called agent or instrumentality is not the bankrupt corporation. The Iron Clad Manufacturing Company is in bankruptcy, and the creditors are claiming that the assets of the American Steel Barrel Company, a solvent corporation, should be used for the payment of the debts of the Iron Clad Manufacturing Company, of which the American Steel Barrel Company is alleged to be an agent; while the converse is the situation in the line of cases referred to in the paragraph just quoted.

The present case must stand upon the doctrine upon which the Muncie Pulp Company Case is based, as applied in the case of In re Rieger, Kapner & Altmark, 157 Fed. 609, if the creditors have the right to take the capital stock and assets of an apparently solvent corporation and administer them as the property of the bankrupt, under circumstances much like those in which this right was denied, in the case of the Watertown Paper Co., supra. In the Rieger, Kapner & Altmark Case, supra, a partnership had been adjudicated a bankrupt, and the receiver of the partnership was directed to take possession of the property of a corporation in which the capital stock was owned by the partners of the bankrupt firm, and which manufactured goods to be sold by the firm. Separate books were kept, but the result of an accounting between the firm and the corporation was open to dispute. The court reviews the various cases to which we have referred, finds that the partners used the assets of the corporation in order to give them a double line of credit, that the corporation was subsidiary to and the mere agent of the partnership, and that the partners had acquired the corporate stock; in other words, organized the corporation for that purpose. While holding that the partnership firm, acting as selling agent of the corporation, obtained the advantage of property rights in the capital stock and in the management of this apparently solvent corporation, the court nevertheless held that because these owners of this stock had mismanaged their partnership property, and had not kept their activities separate, to the extent of avoiding fraud upon the partnership creditors who relied upon the representations of the availability of the assets of the corporation, all of the assets of the independent corporation should be available for the creditors of the bankrupt partnership, in order that these individual and partnership creditors should not be denied participation in the administration of so much of the bankrupt's estate as might be found in the possession of the corporation. The court further held that to compel the partnership creditors to remain silent spectators until the

corporate creditors shall have been paid in full out of the proceeds of the sale of the corporate property, or out of the proceeds of the business if it should be continued, or until the corporate property is exhausted, is to deny them a right guaranteed by the bankruptcy act, and is consequently fraudulent in law. The court further held that:

"The individual partnership creditors have a direct interest in the corporate assets, for, assuming, without deciding, that the innocent corporate creditors must first be paid out of the corporate property, the residue, if any, would pass for administration to the trustee in bankruptcy."

In order to prevent ultimate loss, the court in that case extended the receivership to the property in the possession of the corporation, giving such receiver the power to exercise the rights of all parties in interest. But it did not determine, nor apparently attempt to determine, in a summary way or otherwise, whether or not the title to the property of the solvent corporation was in the bankrupt estate, and certainly did not determine that the corporate assets were held by it merely as agent or bailee. The court was apparently attempting to prevent dissipation of the assets, and in view of the fact that the bankrupts were partners, and that their personal holding of all the stock of the corporation put the bankruptcy court in control of the entire stock of the corporation, a plain reason existed why, under circumstances indicating such apparent fraud, the bankruptcy court should exercise the right of these stockholders to prevent further fraud, and the extension of the receivership was the only practical and legal way. But the doctrine of this case has to be extended materially, and the rights of the corporate creditors and corporate stockholders seriously interfered with, before, in the situation shown in the Watertown Pulp Company Case, supra, an order can be made treating the property of a solvent corporation as that of a bankrupt corporation, and in a summary proceeding holding that this property belongs to the creditors of the bankrupt corporation, without the right of the respondents to a determination of their claims, in an action in a court having jurisdiction to try the same.

[3]. The whole line of cases seems to depend upon three principles. First, the property of a bankrupt, held by an agent or bailee without claim of title, can be administered by the court in the bankruptcy proceeding; second, if the property of a bankrupt has been fraudulently transferred to some other person, and can be traced into the hands of that other person, then in a summary proceeding, if the jurisdiction be consented to, or in spite of objection if the fraud be indisputable upon the record presented by the parties, the bankruptcy court may proceed to deal with the property as to which title did not pass by such fraudulent transfer; and, third, if upon the admitted situation of the parties it appears in a summary proceeding that an independent corporation or agent has property to which no title is claimed or which seems to fall within the class just defined, a restraining order, or, if necessary, a receivership with respect to that property may be ordered by the bankruptcy court to prevent irreparable injury, until the property over which the bankruptcy court does have jurisdiction can be located and disposed of. Having thus considered the principles and their application as set forth in the decided cases,

it is necessary to analyze the exact situation in the present case, to determine into which class it falls and what rights the creditors appear to have.

[4] The application is to compel the American Steel Barrel Company, as a corporation, and Mrs. Seaman, as an individual and as an officer of the American Steel Barrel Company, to turn over the capital stock of the American Steel Barrel Company, and also to deliver to the trustee of the Iron Clad Manufacturing Company all of the assets of that corporation, not as security nor to prevent loss, nor because any such right as the lien of a judgment or an equitable claim upon an accounting has been shown to exist against the American Steel Barrel Company, but for the alleged reason that these assets and the capital stock belong to the Iron Clad Manufacturing Company, and hence that a summary determination as to their possession can be made.

At the time of the first application, certain elements of necessity for preserving those assets might have been made the basis of an order for a temporary receivership, similar to that in the case of Rieger, Kapner & Altmark, supra; but the creditors, instead of renewing or following up their application, as this court intended them to do, and apparently anticipating that in the face of the interposed answer and prior to adjudication greater difficulty would be experienced than afterward, preferred to appeal; and have only renewed their application after having brought in the trustee, who now has title to the estate of the bankrupt, the Iron Clad Manufacturing Company, and who has the right to bring any plenary action for which a cause can be shown.

The determination, therefore, that the assets or the stock of the American Steel Barrel Company belong to the estate of the Iron Clad Manufacturing Company, in a summary proceeding of this nature on behalf of the trustee in bankruptcy, is equivalent not to a mere order for the preservation or administration of the assets, but to an actual finding that the American Steel Barrel Company has no title thereto, and no right to administer these assets, nor to answer for any claim that may exist with reference thereto. It would seem that strong evidence of fraud and strong necessity for the intervention of such a summary remedy would be necessary before it can be held that the claim of title, under which the American Steel Barrel Company seeks to defend its property and answer in a court of law or equity whatever claims might be brought against it, should be held to be merely colorable or fictitious.

In addition to this, the stock in question, now held by Mr. Wheelock (but at the time the petition in bankruptcy was filed apparently standing in the name of Mrs. Seaman), was nominally the property of Mrs. Seaman individually. The question of whether she as an officer and owner of the stock of the Iron Clad Manufacturing Company can be shown to be merely the agent of the Iron Clad Manufacturing Company in thus holding the stock of the American Steel Barrel Company might be tried at the same time and upon the same testimony, but its decision will not furnish automatically an answer to the ques-

tion as to whether the trustee of the Iron Clad Manufacturing Company is entitled as well to take the assets of the American Barrel Company.

If the position of the American Steel Barrel Company be that of the Remington Pulp Company, in the case in 169 Fed. 252, 94 C. C. A. 528, it might be held that the shares of stock were the property of the bankrupt estate, and yet that the corporation was so independent and held its assets under a claim of title such that it could not be deprived thereof, without the obtaining of judgment in an action. It appears from the record and there is nothing to indicate the contrary that the Iron Clad Manufacturing Company had been in existence many years and had built up a continually increasing business; that at a time as long ago as July 18, 1907, the real estate and buildings of both corporations were appraised at the sum of $974,000, and of this $714,000 represented the property owned by the Iron Clad Manufacturing Company alone. This property was subject to a $75,000 first mortgage which is now being foreclosed, and the papers show plainly that for many years prior to 1905 at least the stock of the Iron Clad Manufacturing Company should have paid dividends and was increasing in value. This condition seems not to have changed substantially at the time the American Steel Barrel Company was incorporated.

The creditors attack the incorporation of the American Steel Barrel Company as having been organized by the use of dummies; but, as is shown in the creditors' own affidavits, this was the usual arrangement by which men skilled in such matters prepare the preliminary papers and start a corporation upon its way, turning it over when organized to the persons actually interested. Such directors are not fairly characterized as "dummy directors," except in the sense that they are doing no more than to perform, in a perfectly legal manner, with no pecuniary interest in the business itself, the necessary and legal requirements, for a proper compensation. The argument which the creditors seek to draw from their criticism of this method of organization casts some light upon their attitude in concluding that fraud is apparent throughout all of the transactions. The capital stock of the American Steel Barrel Company was immediately increased from $2,000 to $25,000. A brother of Mrs. Seaman was active in the organization, under her direction, and became a director and officer of the company. Money for purchasing the capital stock is claimed by Mrs. Seaman to have been paid by her personally. The creditors' affidavits furnish the suggestion, and substantially prove that it was advanced out of the bank account of the Iron Clad Manufacturing Company at Mrs. Seaman's direction. Neither party has shown clearly whether or not it was charged to her or what credit the Iron Clad Manufacturing Company received therefor on its own books. All of the real estate occupied by the American Steel Barrel Company and standing in its name is shown by the papers to have been purchased through the efforts of one Maximilian Kahn, a broker employed by Mrs. Seaman, with the exception of one lot which was obtained in foreclosure, and that lot was bid in by a broker acting for

the Iron Clad Manufacturing Company. Again, the money with which these lots were paid for came out of the treasury of the Iron Clad Manufacturing Company; but the evidence does not show clearly whether this was charged to Mrs. Seaman or what credit the Iron Clad Manufacturing Company received therefor.

After the American Steel Barrel Company began its business, which is shown by the papers to have been profitable and increasingly prosperous, a considerable tract of real estate belonging to the Iron Clad Manufacturing Company was used by the American Steel Barrel Company, under an arrangement claimed to have been a lease, but which now turns out to be a verbal direction by Mrs. Seaman as to the use of this part of the Iron Clad Manufacturing Company plant. In the same way the large and expensive power plant of the Iron Clad Manufacturing Company, which included an engineroom with dynamo for furnishing electric current, has been run more and more for the benefit of the American Steel Barrel Company and less and less for the Iron Clad Manufacturing Company, until at the time of the receivership the power plant was entirely too large for the Iron Clad Manufacturing Company's activities, and the balance for this use was going heavily against the American Steel Barrel Company. In the same way, the purchase of machinery, tools, materials, general equipment, and all sorts of supplies was made with the money of the Iron Clad Manufacturing Company or on its orders. Certain methods of charging up to the American Steel Barrel Company its proportion of all these items was followed; but community of office and clerks, with the sharing of shops, workmen, and plant, led to a confusion which increases the difficulty of tracing any item through the various books of the Iron Clad Manufacturing Company and the American Steel Barrel Company. The wages of the workmen who performed work for the American Steel Barrel Company in the Iron Clad Manufacturing Company's plant were paid by the Iron Clad Manufacturing Company, but separate and different colored time checks were used for tabulating their work, and were charged up on the books against the American Steel Barrel Company. The affidavits indicate, and the situation seems to have been, that the funds of both companies were used, not only by the orders of Mrs. Seaman, but by others, from time to time as occasion demanded, and it would also seem that in many instances the accounts were confused. It may well be doubted whether or not the books show the proportions which the American Steel Barrel Company should bear of many of these transactions. Some of the real estate stands in the personal name of Mrs. Seaman and is not involved in this motion, but the papers show that in the same way the consideration with which this real estate was purchased apparently came from the Iron Clad Manufacturing Company, and was paid by it to Mrs. Seaman at her direction. Some investment was made by her from her own private funds, and recently, according to the affidavits, she has increased these advances both to the Iron Clad Manufacturing Company and to the American Steel Barrel Company, and in so doing has not distinguished upon the books of the concerns whether or not these credits are due to her as presi-

dent of the Iron Clad Manufacturing Company, or as president of the American Steel Barrel Company, or as an individual.

It appears from the record that certain officers and employés of the Iron Clad Manufacturing Company have made such use of its funds and have so interchanged expenditures and cash items represented by checks that there now exist claims amounting to much more than the entire indebtedness of the Iron Clad Manufacturing Company, which Mrs. Seaman (and through her the trustee in bankruptcy) alleges were wrongfully paid upon false or forged checks, and which, according to the papers upon this motion, are in no way the acts of Mrs. Seaman or of the officers of the corporation through whose acts the creditors claim that the stock and assets of the American Steel Barrel Company belong to the Iron Clad Manufacturing Company.

It also appears from the record that between 1907 and 1911 there has been a 40 per cent. depreciation in the value of the real estate of both companies, which of itself may have created the condition of ·insolvency. An apparent balance in favor of the Iron Clad Manufacturing Company against the American Steel Barrel Company has (according to the affidavits presented and the claims filed with the referee) been wiped out, and, if these claims be allowed, to have been changed from a balance of over $300,000, against the American Steel Barrel Company, to $445,811.89, which the American Steel Barrel Company claims is owed by the Iron Clad Manufacturing Company to it. If these figures be verified and allowed to any appreciable extent, it would indicate that the Iron Clad Manufacturing Company has run behind through loss of business, bad management, or the possible criminal acts of individuals, and also diminution in the value of its real estate of some $280,000, and that the property of the American Steel Barrel Company has been used to stop the loss of Iron Clad Manufacturing Company assets to an exceedingly large amount. There is shown by the papers a claim of Mrs. Seaman for salary throughout the various years and for other advances (which was waived by her for the purpose of determining the question of solvency but which is now presented for allowance) amounting to over $200,000, and, as has been indicated, the capital stock of these companies has never been considered nor have the individual cash accounts of the stockholders ever been charged against them.

It appears from the papers that the Iron Clad Manufacturing Company and the American Steel Barrel Company were owned by Mrs. Seaman, were conducted by her, were managed by her as her personal property, and, in so far as there is any estoppel with respect to the American Steel Barrel Company, it arises from the acts of Mrs. Seaman. The Iron Clad Manufacturing Company would be certainly estopped from denying that it has treated and claimed much· of the property of the American Steel Barrel Company as its own. But it is impossible to hold that title to the property of another, or a claim of title to that property, can be successfully made out by representations on the part of the claimant where the authority of the person making the representations is not shown to have been given by the party whom it is sought to estop; i. e., the American Steel Barrel

Company. The creditors show statements to R. G. Dun & Co. by the Iron Clad Manufacturing Company, signed by Mrs. Seaman, and including an item entitled "American Steel Barrel Company" in the column labeled "Assets." In the statement of December 1, 1906, this amount was fixed at $75,000; in 1907, $100,000; and in 1909, $161,-328.92. A further item of $43,927.97 was also included, but this refers to certain Baltimore real estate, and was put in by mistake on the part of the creditors. The statement for 1909 calls the item above set forth "Investment—American Steel Barrel Company." Some of the witnesses whose testimony is presented have stated that these amounts represent the balance of debit and credit items. In June, 1907, the American Steel Barrel Company issued a statement showing assets of $262,761.59, with an item of accounts payable due to the Iron Clad Manufacturing Company of $13,638.55. The testimony further shows that R. G. Dun & Co. issued ratings upon the American Steel Barrel Company as a separate corporation each year, and have furnished such information without regard to the Iron Clad Manufacturing Company's statements or ratings, also made by them. The real estate and buildings of the American Steel Barrel Company are shown by the papers to have cost $142,000, its capital stock was $25,000, and in 1907 this real estate was apparently appraised at $260,-000.

The respondents deny all statements of intention to admit more than a debit relation, but it must be presumed that, in so far as Mrs. Seaman knew of the claims by the Iron Clad Manufacturing Company in the above statements, she would be estopped, and the American Steel Barrel Company would be estopped, so far as claims upon her stock might be concerned, from denying the amount of the items above set forth, and, if the items can be substantiated, from admitting whatever they represent against the American Steel Barrel Company. Mr. Nutt, the former accountant of the Iron Clad Manufacturing Company, has testified that they represent apparently debit balances: but how the Iron Clad Manufacturing Company invested or advanced these amounts to the American Steel Barrel Company, or the basis for this computation or valuation, nowhere appears. No interest has ever been claimed and no dividends from the American Steel Barrel Company have ever been demanded. If this represents indebtedness, the item may have increased or diminished. The Iron Clad Manufacturing Company may be entitled to interest upon whatever amount may have been advanced as a loan, or an accounting for profits if an actual investment was made. But we have no guide upon the present proceedings from which to determine the situation, and the statements amount only to an admission by Mrs. Seaman and the American Steel Barrel Company of some sort of liability for the amounts in question, and a responsibility to account for whatever it may be shown that these items represent. A written statement by one Maj. Gilman, who was a director and financial manager of the Iron Clad Manufacturing Company (and who is alleged also to have been manager of the American Steel Barrel Company, although this is specifically denied, and no proof is shown beyond inference from

his own statement), that the Iron Clad Manufacturing Company owned the stocks and bonds of the American Steel Barrel Company, is not evidence of title, nor shown to be any admission within the scope of his authority as to the American Steel Barrel Company. Certain cuts or representations of the entire plant, upon the letter heads of both companies, might be considered evidence if any one were deceived thereby, but do not show ownership of one distinct entity by the other. Similarly, the fact that an appraisal of the property standing in the name of the Iron Clad Manufacturing Company was made to include the land of the American Steel Barrel Company, because Maj. Gilman told the appraiser that all of the real estate was a part of the plant, and that the appraiser thereupon used this direction instead of the description of the property covered by the mortgage, does not show that the American Steel Barrel Company and Mrs. Seaman knew of the error, or intended it to be committed. Some action might lie thereon, but title in the Iron Clad Manufacturing Company is not conclusively established thereby. The appraiser did not have before him the description of the property which the Iron Clad Manufacturing Company intended to be appraised, and the American Steel Barrel Company did not participate at all in the transaction.

It appears that raw materials and supplies for the use of the American Steel Barrel Company were ordered through a purchasing agent of the Iron Clad Manufacturing Company, and if credit were needed, and if the Iron Clad Manufacturing Company had credit, this may have induced the creditor to make the sale. John M. Dierkes, a witness called by Mrs. Seaman, testified that the Iron Clad Manufacturing Company received substantially all the proceeds of the sale of manufactured products by the American Steel Barrel Company, since the American Steel Barrel Company commenced business. He testified, further, that the Iron Clad Manufacturing Company received substantially all of the large profits which were earned by the American Steel Barrel Company. These items of testimony would show plainly that if the creditors of the American Steel Barrel Company were seeking to show that the Iron Clad Manufacturing Company had received assets belonging to the American Steel Barrel Company, or were seeking to estop it and the Iron Clad Manufacturing Company from denying that the creditors of the American Steel Barrel Company had rights against the Iron Clad Manufacturing Company, the question would be easier.

But does the converse follow? If the Iron Clad Manufacturing Company is indebted to the American Steel Barrel Company to this extent, and if the Iron Clad Manufacturing Company has received the proceeds of sales of the property in return for these purchases, or as items upon the other side of the account, the matter would seem to be one of debit and credit, and does not furnish us any evidence on the question now before the court. The testimony does not show plain ownership of the American Steel Barrel Company and of its assets by the Iron Clad Manufacturing Company, even though the American Steel Barrel Company and Mrs. Seaman have allowed the Iron Clad

Manufacturing Company to incur debts and use the property of the American Steel Barrel Company to pay the same without action by the American Steel Barrel Company independent of the Iron Clad Manufacturing Company as its agent. In making the return for the federal incorporation tax, in September, 1910, and again in November, 1910, Mrs. Seaman verified the report given to the government. In each case the American Steel Barrel Company was said by her to be a subsidiary of the Iron Clad Manufacturing Company. At the time of the latter report, she stated that a separate report could not be made for the American Steel Barrel Company "which is a subsidiary company." The affidavit goes on to say that the American Steel Barrel Company has "never been separated from the main company. It is simply a department. The same presses do the work for both companies. The same pay rolls are used for both companies and no separate books were kept, so that it is impossible for us to divide or separate them. The one report covers both." These papers describe the American Steel Barrel Company as being a subsidiary of the Iron Clad Manufacturing Company, in the sense that the interests and the business of the companies were so intermixed that no separate report could be rendered to the government which would correctly differentiate between the two companies. But it is also apparent that the officers of the government, knowing that each was a separate corporation, might well have inquired whether or not each was not doing more than $5,000 worth of business per annum, and whether the companies were not subject to taxes, even though the totals be so merged that they could not be distinguished. The affidavit does not show that the Iron Clad Manufacturing Company owned the assets of the American Steel Barrel Company, when it is also taken into consideration that Mrs. Seaman at that time owned the capital stock of both companies, and that the claim of the Iron Clad Manufacturing Company to ownership of the American Steel Barrel Company would certainly depend upon ownership by the Iron Clad Manufacturing Company of Mrs. Seaman's individual holdings of stock, and of her own personal and private property. In other words, the Iron Clad Manufacturing Company must trace into the hands of Mrs. Seaman property of its own, such that she must be held to have been a trustee for the Iron Clad Manufacturing Company and not for herself as an individual, and that the investments which she made in the American Steel Barrel Company property, or in its own stock, were made for the Iron Clad Manufacturing Company and its creditors and not for herself, or that she was guilty of such fraud that the creditors of the Iron Clad Manufacturing Company have the right to treat her as a trustee for themselves in her dealings with the American Steel Barrel Company.

It does not seem that the proof goes nearly to the extent necessary to show these things. The progressive changes in the value of the Iron Clad Manufacturing Company's business, and the progressive improvement in the value of the American Steel Barrel Company's business, would indicate that Mrs. Seaman was allowing one of her properties to increase in value, and another to decrease, and that she personally may be responsible, or may have made herself responsible

to any creditor who extended credit to the company which was going down in value, on her representation of facts; and, to the extent to which she used the capital stock, or the right to ownership of the valuable or increasingly valuable company, in obtaining credit for the other company, that this capital stock, or her rights in the prosperous company, should be made subject to any credit which was obtained by her on the strength thereof. But we are not concerned with that on the present motion. We have to determine whether or not her claim that the assets as well as the real estate of the American Steel Barrel Company are actually the property of the company is plainly and certainly false. It cannot make any difference on this motion whether she or the American Steel Barrel Company may be held liable for any credit or for any contract which she obtained upon the strength of those representations.

The affidavit of Thatcher M. Brown, verified the 22d day of June, 1911, shows that credit was extended to Mrs. Seaman as an individual, and as representing the Iron Clad Manufacturing Company, upon a statement that she owned her city home, and that the Iron Clad Manufacturing Company owned certain real estate appraised at $970,000. It now appears, as has been said, that some $260,000 worth of this real estate was not included in the property covered by the trust mortgage, and not in the property now standing in the name of the Iron Clad Manufacturing Company. It also appears that Brown Bros. & Co. extended credit upon delivery of certain bonds and securities, which were covered by the trust mortgage in question, and that the issue of this trust mortgage, viz., $550,000, in addition to the $75,000 first mortgage, make a total indebtedness greater in amount than the present appraised value of the real estate of the Iron Clad Manufacturing Company. But, whether or not this mortgage be a good investment at the present time, the appraised value of the real estate of the Iron Clad Manufacturing Company, at the time the mortgage was made, was much more than the face value of the mortgage; and there seems to be nothing in the affidavit to indicate that any representation was made as to the ownership of the American Steel Barrel Company beyond the valuation placed thereon by the appraiser, who does not seem to have appraised the property by the description in any of the instruments, but rather to have appraised all of the property pointed out to him by the manager as constituting the plant.

Again, it may be that the American Steel Barrel Company would be estopped, and that Mrs. Seaman would be compelled to make good for the acts of her agent in any deception (if it amounted to that) by which the property of the American Steel Barrel Company was included in the extension of credit. But this does not go so far as to show that the title to the American Steel Barrel Company's property is in the Iron Clad Manufacturing Company, and that the fraud for which damages might be asked is such as to vitiate the ownership or the claim of title to the property of the American Steel Barrel Company as a separate corporation. The books of the company were certainly confused. Taxes upon the property of the American Steel Barrel Company, and interest on its mortgages, were paid by the Iron Clad Manufacturing Company, and no proper entries of these were

made in the books. The profits of the American Steel Barrel Company were paid to the Iron Clad Manufacturing Company, and, if these payments had been made as dividends on stock, or by formal action of the corporation (apparently thus admitting ownership), it would seem that Mrs. Seaman and the American Steel Barrel Company would be estopped from claiming that the matter is actually one of debit and credit. But inasmuch as Mrs. Seaman was the owner of both, and inasmuch as she has erroneously assumed the right to do with the property of both concerns as she pleased, then the question which we have here is whether or not the fact that Mrs. Seaman undertook to treat the assets of both properties as if they were responsible for the debts of either company, or for her own use, is making the property of either company merely an asset of the other, or whether it gives the right to the creditors of the one first getting into difficulties to look to the property of the other, because the name of the one in difficulties is that which has been applied generally to all of Mrs. Seaman's property, and because that company is the older and has acquired the greater known business reputation.

A further question is presented by the trustee and by the creditors. If we were determining whether or not damages had resulted from the acts of Mrs. Seaman or of the American Steel Barrel Company, and whether or not those damages could be assessed, if we were considering whether or not, in an equitable way, the property of all the parties concerned should be taken into the custody of the court and protected, so that whatever may belong to the bankrupt can be secured for it, assuming thereby that some portion of the property can be traced and that it is inseparable from other portions, so that the bankruptcy court would have a right to assume possession of the whole, to the extent of protecting these assets, or if this motion were an attempt to actually trace assets into the hands of the American Steel Barrel Company, or if the parties had consented to the jurisdiction of this court, it might be possible to take further testimony or to work out some conclusion from what testimony we have. But this is not the case. The creditors do not ask for any such relief. They ask to have the receivership extended solely upon the ground that the property of the American Steel Barrel Company belongs to the Iron Clad Manufacturing Company, and that the capital stock of the American Steel Barrel Company did not belong to Mrs. Seaman, but that it also belonged to the Iron Clad Manufacturing Company and was wrongfully withheld by her. An adjudication having been had, the question of turning the property over to the receiver can no longer be considered. We have no opportunity to consider issuing merely a restraining order, or to treat the receiver as a custodian pending the further order of the court, which is what the court apparently assumed in the case of Rieger, Kapner & Altmark, supra.

If in a summary proceeding the court holds that the property of the American Steel Barrel Company is actually that of the Iron Clad Manufacturing Company, and directs that it be turned over to the trustee who now stands in the place of the receiver, such determination is equivalent to a finding that no one has title thereto except the

Iron Clad Manufacturing Company, and that we have thrown out of consideration the claim of Mrs. Seaman or of Mr. Wheelock to the capital stock of the American Steel Barrel Company, and the claim of that company to the property and real estate in its possession by determining upon the face of the record that its claim is not a claim of title; that, even if they be wrongdoers, they have not the right to be held responsible for their wrongs and to have the damages assessed. We must hold, on the other hand, if the view of the creditors be taken, that no title ever passed, and that all of the capital stock and all of the assets are shown upon the present record conclusively to be property of the Iron Clad Manufacturing Company, and to be available as a whole for the purposes and needs of the bankrupt estate. This might have resulted, prior to the adjudication in bankruptcy, in making the Iron Clad Manufacturing Company solvent. It might have resulted in ousting this court of jurisdiction to consider the case at all; but at the present time this question cannot be considered. The adjudication in bankruptcy has been had, the question, of insolvency has been determined, upon the assets which the Iron Clad Manufacturing Company had upon the 23d day of May, 1911, which did not include any of those now claimed by this motion. The creditors have claimed that this court had jurisdiction to adjudicate the Iron Clad Manufacturing Company insolvent, upon the showing of assets it had according to the statements that were presented upon the trial of the issue. The creditors did not treat any of the assets of the American Steel Barrel Company, nor the capital stock of that company held by Mrs. Seaman, as property of the Iron Clad Manufacturing Company, and they apparently thereby admitted that for the purpose of their claim that this property was not in the Iron Clad Manufacturing Company. If the property was held by Mrs. Seaman or the American Steel Barrel Company, in fraud of the Iron Clad Manufacturing Company, it was available as an asset of the Iron Clad Manufacturing Company to the creditors of that company, and should have been included in the proof as to the assets of the Iron Clad Manufacturing Company at the time of adjudication. Of course, as between Mrs. Seaman and the creditors, her failure to introduce evidence or to admit that the property of the American Steel Barrel Company, and the capital stock, was available as an asset of the Iron Clad Manufacturing Company, would be sufficient to close her mouth from now questioning the fact that the creditors did not include the property. But when the court is merely considering whether or not her claim of title to this property is a bona fide title, or whether it is colorable only, it is impossible to escape the conclusion that if the creditors considered the property of the American Steel Barrel Company, and its capital stock, to be property of the Iron Clad Manufacturing Company, and merely in the possession of a third party, that claim should have been presented upon the trial of the question of solvency. Their failure to raise the question at that time would indicate that there is sufficient dispute as to the title to make it impossible to dispose of it summarily upon a motion of this sort.

As the motion stands at present, if the property should be turned

over to the trustee as property of the Iron Clad Manufacturing Company, no issue as to damages based on fraud, and no claim of debt could ever be determined and liquidated. The creditors and the trustee in bankruptcy would never have to prove any specific item or any specific fraud as to which damages could be assessed. The creditors of the American Steel Barrel Company would either become general creditors of the Iron Clad Manufacturing Company, having been dealing with an agent for an undisclosed principal, or they would have to be taken care of out of the proceeds of the American Steel Barrel Company's property, and would have to have the assets of the American Steel Barrel Company realized upon in the bankruptcy proceedings of the Iron Clad Manufacturing Company. The creditors of the American Steel Barrel Company, as well as of the Iron Clad Manufacturing Company, would take the chance of the assets proving to be sufficient for their needs. In view of the fact that the trust mortgage to secure bonds to the sum of $550,000 is outstanding, and that these bonds have apparently been sold for a very small amount, and that the balance stands as a deficiency, so that the right to foreclose this mortgage, in addition to the mortgage for $75,000 upon the real estate of the Iron Clad Manufacturing Company, is also being acted upon by the secured creditors, some of whom were also petitioning creditors in the case, and in view of the fact that if these large deficiency claims be proven, and the property be disposed of upon foreclosure, considerable further deficiency judgments may be created, it would seem that the unsecured creditors of the Iron Clad Manufacturing Company are likely to receive a very small percentage, if they receive anything at all, upon their claims. It is alleged that there are no creditors of the American Steel Barrel Company except a mortgagee, whose lien seems to be valid. But the stockholders and their creditors, or any one now becoming a creditor for merchandise, would be in a difficult situation to protect their rights, if the property of the American Steel Barrel Company be turned over to the trustee in bankruptcy, and if the rights of the creditors of the Iron Clad Manufacturing Company against the American Steel Barrel Company shall not be definitely determined and the amounts fixed in some suit or proceeding where the various interests can be heard and compared. In fact, the turning over of this property to the trustee in bankruptcy would not be a determination of creditors' rights, but would be equivalent to a determination that the respondents herein have no rights, and this has not been conclusively shown.

Under these circumstances and bearing in mind that the American Steel Barrel Company now claims a large debt from the Iron Clad Manufacturing Company, and that in endeavoring to prove this claim it will be necessary for the American Steel Barrel Company to show the amount which it previously owed to the Iron Clad Manufacturing Company, or which had been invested in the American Steel Barrel Company by the Iron Clad Manufacturing Company, and that these amounts have been paid, it is impossible to conclude that a bona fide claim of title cannot exist on the part of the respondents to the property as to which these questions arise. The only basis for such a

claim would be the joinder of all these property rights in Mrs. Seaman, at the time when the alleged fraudulent acts by her are said to have occurred. But as the companies and she herself were then abundantly solvent, and no reason for fraud has been shown, her claim of title cannot be held to be merely colorable, and the demand by Mrs. Seaman and the American Steel Barrel Company, that the creditors should not obtain this property without' suit, must be sustained.

As to the stock held by Mrs. Seaman, the question is apparently even more simple. A very difficult matter of bookkeeping is shown, and a very difficult question of fact is presented as to whether Mrs. Seaman owed money to the Iron Clad Manufacturing Company, or' whether the Iron Clad Manufacturing Company owed money to Mrs. Seaman. It depends upon the alleged criminal acts of many people. This cannot be determined upon this motion. Her claim to the capital stock, and that of Mr. Wheelock as her successor, or her claim to the proceeds thereof, is such that the creditors can ask no more than that she be temporarily restrained, and that now Mr. Wheelock be temporarily restrained, from disposing of his capital stock without notice to or consent of this court under the circumstances. In the same way, the American Steel Barrel Company should be restrained from disposing of its property as a whole, and the trustee should be given opportunity to substantiate his claims against that company, with the certainty that the assets will not be removed beyond the reach of the court; but further than that the court cannot go.

The objection to a summary proceeding to determine the claim of title of third parties in possession must be sustained.