## In re ROUTT LUMBER CO.

## STANDARD PLANING MILL v. PACIFIC COAST PAPER CO. et al. *

### No. 6540.

Circuit Court of Appeals, Ninth Circuit.
May 31, 1932.

Herman A. Bachrack, of Los Angeles, Cal., for appellant.

William T. Doyle, of San Francisco, Cal. (William J. Hayes and Grant H. Wren, both of San Francisco, Cal., of counsel), for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

WILBUR, Circuit Judge.

On June 29, 1931, the receiver of the Routt Lumber Company, an alleged bankrupt, was directed by the trial court to take charge of all the assets of the Standard Planing Mill. From this order the Standard Planing Mill appeals. The order was based upon the conclusion that the alleged bank-

rupt corporation was so intimately related with the Standard Planing Mill and its business as to justify the court in concluding that they were in substance and effect one and the same. The order was made upon the petition of Pacific Coast Paper Company, Pacific Portland Cement Company, Sloss & Brittain, and A. Holm, assignee of Redwood Manufacturers' Company, Wendling-Nathan Company, and Sugar Pine Lumber Company, Limited, all alleged creditors of the alleged bankrupt, whose claims aggregated over $25,-000, who alleged that "the Standard Planing Mill, a corporation, and the Routt Lumber Company, a corporation, are the business conduit and alter ego each of the other, and that the Standard Planing Mill is in fact and in substance the Routt Lumber Company under another name." The petition then asserts the reasons for the contention which the creditors thus advanced. These reasons may be summarized as follows. That the assets and goods of the two corporations are intermingled and confused; that the two corporations use the same office and equipment in Fresno, Cal.; that the managing officers of the two corporations have been the same since December, 1928; that from December, 1928, to March 3, 1931, the Routt Lumber Company owned over two-thirds of the capital stock of the Standard Planing Mill and had a contract with M. V. Bishop, the owner of the other one-third of the capital stock, for the purchase of such interest; that the two companies used the same billhead; that a book transfer was made of a 5-ton truck from the Routt Lumber Company to the Standard Planing Mill, and also of accounts and notes receivable amounting to $6,224; that the Routt Lumber Company purchased 950 sacks of cement from the Yosemite Portland Cement Company to be delivered directly to Walter Harris; that Harris paid the Standard Planing Mill therefor, that the Standard Planing Mill has never credited the Routt Lumber Company therewith, and that the Routt Lumber Company still carries on its books a debit for this amount owing to the Yosemite Portland Cement Company; that the Routt Lumber Company, while insolvent, had purchased shingles, asphalt sheeting, paints, glassware and mirrors, lumber, etc., and the Routt Lumber Company still carries among its accounts payable debits for these items thus purchased, while the Standard Planing Mill lists these same items in its inventory and has them in its possession although neither the books of the Routt Lumber Company nor those of the Standard Planing Mill show any such transfer has been

made; that A. Holm, one of the petitioners, had attached the properties and assets of both the Routt Lumber Company and the Standard Planing Mill and that the sheriff of Fresno county was in possession of properties of the Standard Planing Mill at the time of the application; that a suit by the assignee of the brother of one of the officers of the Standard Planing Mill was commenced against the Standard Planing Mill for $8,500, and that a default judgment had been entered in such suit; and that the Standard Planing Mill was not conducting any business, had no officers to take care of its assets which had been intermingled with those of Routt Lumber Company. It will be observed in passing that the petition alleges that one-third of the stock of the Standard Planing Mill is outstanding in the name of M. V. Bishop and that the Routt Lumber Company had transferred the remaining two-thirds of the stock before the petition in bankruptcy had been filed. It also appears from the allegations of another petition filed by the creditors and made a part of the record at the hearing upon the foregoing petition that the purchase price agreed to be paid by the Routt Lumber Company for the 11,500 shares owned by M. V. Bishop was the amount of $11,500 with 8 per cent. interest from January 1, 1929. Affidavits were filed in reply to and in support of the creditors' petition. The supporting affidavits made by the receiver and by an expert accountant tend to sustain the petition in some but not in all particulars. Among the counter affidavits is one by Leonard W. Routt, secretary of the Standard Planing Mill, in which he alleges it is not true that the assets of the Standard Planing Mill were intermingled and confused with those of the Routt Lumber Company, but that they had always been kept separate and distinct and that the inventories of the properties of the two companies are in the hands of the sheriff of the county of Fresno, state of California, that although the two companies had the same office and place of business they had been maintained separately until the fire in 1928 destroyed the office of the Standard Planing Mill; he alleges it is not true that the officers of the two corporations are the same, alleging that they have never been the same and that in no instance has the president of one company been the president of the other; he alleges that the stock in the Standard Planing Mill formerly owned by the Routt Lumber Company had been transferred by it to W. E. Opie and to Builders' Finance Company; that the statement in the petition in regard to purchase of supplies on the credit of the Routt Lumber

Company and the transfer thereof to the Standard Planing Mill are untrue; that the transactions fully appeared upon the books of the corporation; he alleges that the property is being taken care of by a keeper employed by the sheriff of Fresno county; and that there is no necessity for a receivership. He also alleges, and as to this there is no conflict, that the Standard Planing Mill is not insolvent. A separate affidavit by H. W. Hills, a certified public accountant, with reference to the alleged purchase of supplies by the Routt Lumber Company and transfer thereof to the Standard Planing Mill without consideration, states that the books of both companies show that the goods were sold and paid for in cash. The bookkeeper of the two corporations, Miss Betty Pohl, who kept the books of the two corporations for more than three years, testified the two corporations kept separate books and separate inventories of property of each corporation. She states that "separate balance sheets were kept and maintained, and that the two sets of books were always absolutely separate and distinct in all details." The receiver, C. W. Krumbholz, filed an affidavit in which he stated that prior to June 5, 1931, he examined the books of the two corporations and that these books did not show any transfer to the Standard Planing Mill of the various items of goods purchased as hereinbefore stated and that the books of the Standard Planing Mill did not show such transfer. He then states that subsequently to the making of such statement he again examined the books in conjunction with a certified public accountant and discovered "that the Routt Lumber Company had transferred these items to the Standard Planing Mill and showed such transfer in its accounts receivable, and from the books of the Standard Planing Mill and of the Routt Lumber Company, these indicate that such items were paid"; that his former statement was made in good faith. Oliver M. Weed, a certified public accountant, made an affidavit to the effect that the books of the Routt Lumber Company showed that it was in an insolvent condition from January, 1931, to date; that while insolvent the Routt Lumber Company purchased the materials heretofore mentioned from the various creditors and "such materials were sold to the Standard Planing Mill at the same price for which they were purchased; that no commission was charged to the Standard Planing Mill on such purchases; that the Standard Planing Mill has the greater portion of these said items in its inventory;" that the managing officers of the two corporations are the same; that the books

of the two corporations are so interrelated that an examination of the books of one company, without having access to the books of the other company, would, "for most practical purposes, be unsatisfactory"; that "in our opinion, after such examination of the books made as aforesaid, the two companies, although they have kept separate books, are nevertheless one company"; "that the books of accounts and ledgers were purposely so entered." H. W. Hills made affidavit that he had for a number of years made the state franchise reports and federal income tax reports for the two corporations that they kept separate and distinct sets of books and the tax returns have been presented therefrom. W. E. Opie made affidavit that in 1927 he loaned the Routt Lumber Company, alleged bankrupt, considerable sums of money and took 10,000 shares of stock of the Standard Planing Mill owned by the alleged bankrupt as security therefor, and that he took the same upon the understanding that the two corporations were separate and distinct; that on March 3, 1931, he purchased the stock and canceled the obligation of the Routt Lumber Company. M. C. Routt made affidavit that the 24,600 shares of stock of the Standard Planing Mill held by the Routt Lumber Company had been held as security by W. E. Opie and Builders' Finance Company for more than a year prior to March 3, 1931, when the sale of such stock was consummated to the security holders.

The appellees in support of the order make the following points: That the Routt Lumber Company and the appellant Standard Planing Mill were the alter ego and business conduit of one another; a court will, in proper instances, cast aside the legal fiction of distinct corporate entity, irrespective of fraud or actual wrongdoing; and that irrespective of the alter ego theory, the District Court acted within its jurisdiction in extending the receivership. In support of these propositions appellees cite a number of authorities but rely principally upon a statement in Remington on Bankruptcy, vol. 1, p. 455, as follows: "And receiverships over bankrupt corporations have been extended to cover the property and affairs of other corporations which were mere departments of the bankrupt corporations or whose business has been so intermingled with that of the bankrupt corporation's as to warrant the ignoring of the fiction of corporate entity."

The cases cited in the notes to the quotation from Remington on Bankruptcy do not show any situation similar to that in the case at bar. In re Ironclad Mfg. Co. (C. C. A.) 201 F. 66, and Carroll v. Stern & Goldsmith (C. C. A.) 223 F. 723.

In the Ironclad Mfg. Co. Case the Circuit Court of Appeals was dealing with the power of the trial court to compel the production of the books of the second corporation. The question is quite different from that involved herein. In Carroll v. Stern & Goldsmith, supra, the appellate court was dealing with a situation where the property of the Duhme Company had been actually taken in custody by a receiver in bankruptcy of the Keck Company, who had later turned the property over to himself as trustee in bankruptcy for the Keck Company in pursuance of an order of the court directing him to take such custody but to keep separate and distinct accounts and that he should apply the proceeds of the property of the Duhme Company to the obligations of that company. The propriety of this order was not questioned or considered by the Circuit Court of Appeals. It should be noted in this connection that all of the stock of the Duhme Company was owned by the Keck Company.

No case has been cited and we have found none in which two corporations have been treated as identical where the ownership of the stock was as diverse as in the case at bar. In the Looschen Piano Company Case, 261 F. 93, the District Court held that the business of the two corporations was so interrelated that the assets of both should be taken charge of by the trustee in bankruptcy upon the ground that the referee had found that the "two corporations were not separate and distinct legal entities, but the land company was subsidiary to and the mere agent of the piano company" and that the referee was justified in so finding. Upon these findings the order of the referee was affirmed by the District Court. Upon appeal, the Circuit Court of Appeals of the Third Circuit, in Re Looschen Piano Company Case, 266 F. 359, reversed the order on the ground that the bankruptcy court had no jurisdiction to take charge of the property of the Looschen Land & Building Company in the bankruptcy of the Looschen Piano Company Case. It was held that the rights of the trustee in bankruptcy should be adjudicated in a plenary action brought against the Looschen Land & Building Company. The Circuit Court of Appeals, in Re Ironclad Mfg. Co., 191 F. 831, 832, where it was claimed that the American Steel Barrel Company was a mere agent of the Ironclad Company, held that upon such claim the bankruptcy court had jurisdiction to make a preliminary investigation summari-

ly to decide whether or not the claim of adverse ownership was merely colorable, and stated: "Under the authorities a bona fide claim of ownership by a third party raises a question which can be disposed of only by plenary suit; but a mere assertion of ownership, which is wholly unfounded, cannot conclude the court as to the disposition of the claim."

It appears from the decision of the District Court in Re Ironclad Mfg. Co., in 194 F. 906, that the contention was that the capital stock of the American Steel Barrel Company and all its properties belonged to the Ironclad Manufacturing Company. The District Court held that there was a bona fide controversy over the matter and objection to the summary proceedings to determine that question must be sustained. To the same effect, In re Holbrook Shoe & Leather Co. (D. C.) 165 F. 973.

The evidence in this case is far from establishing that the Standard Planing Mill was a mere agent or department of the alleged bankrupt corporation. Consequently, such decisions as In re Berkowitz (D. C.) 173 F. 1012, 1013, In re Rieger, Kapner & Altmark (D. C.) 157 F. 609, and In re Muncie Pulp Co. (C. C. A. 2) 139 F. 546, have no application.

The order of the District Court directing the receiver to take charge of all the property and assets of the Standard Planing Mill is too sweeping in its scope and effect, and, therefore, as it is predicated upon the proposition that the two corporations were substantially the same, cannot be sustained. However, the situation is different with reference to the particular items of property which belong to the bankrupt and are in the possession of the appellant Standard Planing Mill, or, rather, the sheriff as keeper of the property of the appellant. The petition herein, for extending the receivership to the property of the appellant, specifically itemized the property purchased from the various creditors by the alleged bankrupt and alleged to have been transferred to the appellant without consideration. On the other hand, affidavits showed that this property was paid for by the appellant corporation. The trial court made no finding on this issue and the order does not specify such property. If the order had specified the particular items of property set out in the petition as having been purchased by the alleged bankrupt and transferred to the appellant without consideration, the order might be sustained to that extent; but it is apparent that the decision

of the District Court is predicated upon an erroneous theory, namely, that the two corporations were practically identical and should be so treated in the administration of the affairs of the bankrupt.

The order will be reversed, and the case remanded to the District Court for further proceedings to determine what property in the custody of the Standard Planing Mill, if any, is claimed to be the property of the alleged bankrupt, and to ascertain in a summary proceeding whether or not the claim of the appellant thereto, if any, is so lacking in substance and good faith as to justify a summary order for the transfer of said property to the receiver or trustee, with leave to amend the petition as the appellees may be advised.